BLANCHARD, J.
The defendant appeals from a death sentence on a prosecution for murder.
A motion to quash the indictment because returned by an illegal grand jury, and another to quash the venire of the petit jury, were made on the ground that R. A. Munson, who acted as one of the jury commissioners, was disqualified to hold such office; that his presence on the jury commission, as member thereof, on the day of the drawing of the jury was necessary to make a quorum of that body; that his disqualification resulted from the fact that he was also, at the time he acted as jury commissioner, commissioner of a drainage district in the parish where the indictment was laid; and that no person holding any other office under the parish was or is competent to hold the office of jury commissioner.
The trial judge overruled the motion to quash and an exception to this ruling was taken.
Evidence adduced on the trial of the motion shows that when Drainage District No. One was created by the Police Jury of Assumption Parish in October, 1897, Munson was appointed as one of the commissioners thereof and has served as such ever since and is still serving as such.
It further shows that in 1900 he was appointed a jury commissioner for the parish, accepted the appointment, qualified thereunder, and has served ever since as jury commissioner and as such participated in the drawing of the jury in question. In other words, Mr. Munson, as he himself testifies, is filling actively both positions — that of drainage commissioner and that of jury commissioner, and he has done so ever since his appointment to those positions respectively, and is still doing so without question from any source until now.
Section 3, p. 218, of Act No. 135 of 1898 authorizes the District Judge to select and appoint five citizens, who with the clerk of the court, shall constitute the jury commission for the parish; and the statute then goes on to declare that no person holding any *372 office under the State, or any parish, or municipality therein, shall he competent to hold the office of jury commissioner.
We entertain no doubt that when the police jury of Assumption Parish created Drainage District No. One and appointed Munson as one of the commissioners thereof, it was an appointment to an office under the parish within the meaning of the statute referred to.
We, furthermore, entertain no doubt that under the terms of the statute, the offices of drainage commissioner and jury commissioner are incompatible in the sense that the same man may not be a jury commissioner and a drainage commissioner at the same time.
When, therefore, Munson accepted the office of jury commissioner in 1900 he ipso facto vacated the office of drainage commissioner. Thereafter he was jury commissioner, but not drainage commissioner. State v. Fuselier, 51 La. Ann. 1317, 26 South. 264; State v. Arata, 32 La. Ann. 193; State v. Dellwood, 33 La. Ann. 1229.
Having vacated the office of drainage commissioner by qualifying as a jury commissioner, he was competent to serve in the latter capacity, and, hence, there is no error in the ruling of the trial court holding that the jury was properly drawn.
The fact that Munson continues to act as drainage commissioner does not alter the situation. That concerns the drainage commission, the police jury that appointed the commission, and those interested in the proceedings and actions of the commission, but does not concern the courts in the administration of the criminal law.
Munson is both de jure and de facto jury commissioner. As such his acts are valid.
What effect his continuing to act as drainage commissioner may or may not have on the work of that body, its proceedings and doings, we are not called upon here to decide.
But the State encounters a more serious difficulty in the bill of exception taken to the action of the trial court ruling defendant to trial before the sheriff of Caddo had made return on a subpoena issued by the defense for a witness named Bully (or Fuller) who was reported to have gone to that parish, and before the sheriff of Ascension had made return on a subpoena issued by the defense for a witness named Jackson, alleged to be in the town of Donaldsonville in that parish.
The facts were these:—
The accused was charged to have murdered Luther Chase on January 10, 1903.
Indictment was returned against him on January 20, 1908.
Motion to quash indictment and jury venire was filed January 26, 1903, and overruled the next day.
Accused was arraigned January 27, 1903, and immediately thereafter on motion of the State the ease was assigned for trial February 3, 1903. The State asked for subpoenas for certain witnesses named and the accused for certain witnesses named.
On January 28, 1903, counsel, who had, up to that time, represented the accused, withdrew for good and sufficient reasons from the case.
On January 29, 1903, the accused appears to have secured other counsel, and this other counsel, when the case was called for trial on February 3rd, applied for a continuance on the ground that the witnesses ordered subpranaed on the accused’s behalf were not present in court.
The motion recited what was expected to be proven by the absent witnesses, etc. It set forth the accused was penniless and in jail, that he had no means to fee counsel, that counsel who then appeared for him had been secured without compensation after the case had been assigned for trial, that he (the counsel) had not had sufficient time to prepare for the trial, had been unable to examine into the case, talk to the witnesses, etc.
The motion asked for continuance of the case until the next term of the court. A continuance was granted only for three days, or from the 3rd to the 6th of February. On the same day, February 3rd, the accused asked for subpoenas for four witnesses who were named, and gave the place where three of them could be found as New Orleans and the fourth as Shreveport.
It seems that when the case was first set for trial these witnesses had been subpoenaed as being in tile Parish of Ascension, but the deputy sheriff of that parish had made return that they were not residents there.
On the refixing of the case for February 6th, they were ordered re-summoned and *374 New Orleans and Shreveport were given as the places where they would he found.
The accused, as well as his witnesses, are colored people, and the man killed was also colored.
The witnesses appear to have had no fixed place of residence, were moving about seeking work. The contention of the defense is they were in Assumption parish on the day of the killing, but moving about as they were it was impossible for the accused, confined in jail as he was, to keep up with them. Hence, the necessity to change the directions as to where they could or might be found, failing to find and serve them under the subpoenas which first issued.
The further contention of the defense is that the accused, himself, was without fixed place of residence, that he had come to Assumption parish at the beginning of the grinding season (for sugar) seeking work, and was, therefore, a comparative stranger in the parish. That this, together with his confinement in prison and his lack of means to employ counsel made it more than ordinarily difficult to acquaint his attorney with the names and places of temporary abode of those who were present at the killing and who he thought would give testimony tending to establish his plea of self defense.
On February 4th, the day after the refixing of the case for trial on February 6th, the defense asked that Charles Jackson be subpoenaed on his behalf, and gave the place where he could be found as Donaldsonville in the Parish of Ascension.
On the 6th when the case was called for trial, counsel for defendant objected to going to trial oil the ground that the continuance first granted — from February 3rd to February 6th — had been insufficient in point of time to enable the accused with due diligence to secure the attendance of his witnesses for whom subpoenas had been issued, and on the further ground that no returns- had been made on the subpoenas that had issued to Charles Jackson at Donaldsonville and Will Bully (or Fuller) at Shreveport; that because no return had yet been made by the sheriffs of those parishes, the accused had no means of knowing whether or not those witnesses had been served with the process of the court.
The objection being overruled a bill was taken.
The City of Shreveport is three hundred miles by rail from the county seat of Assumption Parish. Three days time to send a subpoena there and get return thereon was insufficient.
The court is not to take it for granted, or act upon the supposition, before the sheriff of Caddo was heard from, that no such man as Bully (or Fuller) was in the parish.
A reasonable time to hear from the sheriff of' Caddo should have been granted. If his return had been made when the case was called for trial, and showed that after due inquiry and diligence no such man as the one subpoenaed had been found, a different question would have been presented.
But, as it was, no return had been made by the sheriff of Caddo and no sufficient time for such return had elapsed.
So, too, with the subpoena which issued to Charles Jackson. No return had been made on it by the sheriff of Ascension parish at the time the case was called for trial on the 6th. While Ascension is the adjoining parish to Assumption, two days (which was all that was allowed as to this subpoena) is not deemed sufficient time to enable the sheriff to hunt up within the limits of a large parish, and serve with the process -of the court, an unknown negro of no fixed abode.
It were better to have waited to hear from the sheriffs of Caddo and Ascension before forcing the trial of a ease upon the issue of which depended a human life.
In State v. Collins, 104 La. 631, 29 South. 180, 81 Am. St. Rep. 150, this court, in reversing a sentence in a murder case where a continuance had been refused, said:—
“The life of a human being was at stake and for the time being it was sheltered by the presumption of innocence. Great deliberation — an utter absence of precipitancyshould have characterized every movement of the court leading up to the conviction.”
A certificate attached to the transcript, over the signature and seal of the Clerk of the Court, recites that the subpoena sent to Caddo parish for Bully (or Fuller) was not received until two days after the trial and sentence of the accused, and that the subpoena which had issued to Charles Jackson had not been returned at all up to that date, *376 which was. the day on which he (the Olerk) completed the transcript of the case for this court.
To this certificate the clerk annexed the subpoena which had issued to Bully and on it no return from the sheriff of Caddo appears at all.
The constitution guarantees to the accused in criminal prosecutions the right to compulsory iH-ocess to compel the attendance of witnesses in his favor. So does the statutory law. Rev. St. 1876, § 992. If Bully or Jackson had been found in Caddo or Ascension parishes and served with the subpoenas of the court and yet refused to attend its sessions, compulsory process would have compelled their attendance. But before it could be ascertained they were there, or not there,, and, hence, before opportunity was given the accused to exercise his constitutional right to compulsory process, if the witnesses had been found and served, he is ruled to trial. .
This was not giving him such a.trial as the organic law contemplates.
The circumstances disclosed do not make out a case of want of due diligence on part of the accused in his action taken, or want of action or effort to obtain the attendance of these witnesses. Due diligence in law means doing everything reasonable, not everything possible. Cameron v. Lane, 36 La. Ann. 721.
He should have not been required to make a showing for a continuance because of their absence until a reasonable time, at least, had been given to hear from the sheriffs of Caddo and Ascension.
He was entitled as matter of strict right, under the law, to this reasonable time to hear from those sheriffs, due diligence in issuing the subpoenas being shown, and nothing appearing to impugn the good faith of the accused in connection with the issuing of subpoenas for them.
Otherwise, the insertion in the fundamental law of the right to compulsory process for obtaining witnesses in his favor were idle.
The case comes well within the rule announced in State v. Boitreaux, 31 La. Ann. 188, where it Was held that when a prisoner has, in proper time, ordered subpoenas to issue, he cannot be compelled to swear to the facts he intends to prove by his witnesses, or go to trial without them, until an earnest and vain effort has been made to bring them into court; and where it was further held that where a reasonable doubt exists as to whether an accused, charged with a capital offense, has had sufficient assistance given him to enable him to produce his witnesses, he must be given the benefit of the doubt.
The case at bar is even stronger than the Boitreaux Case. Here there was no return at all made to the subpoenas by the sheriffs of Caddo and Assumption parishes, and the trial court ruled the accused to trial without waiting a reasonable time to hear from those officials.
In the Boitreaux Case a return was made to the effect the witnesses “could not be found.” AVith reference to that the court said it could not, in a case of such magnitude involving the life of the defendant, even presume that the official charged with the execution of the subpoenas had made that search and inquiry for the witnesses that the law contemplated, and much less could it presume that the witnesses he was ordered to serve did not exist, or, if existing, did not reside, or could not be found, in the designated parish.
It was there also said, with regard to the contention of the State that no description of the person or places of residence of the witnesses had been given, except that they lived in a certain locality, that where the life and liberty of a prisoner are at stake, and the prisoner chained within the walls of a dungeon, it is the duty of the sheriff, or his deputy, in charge of the subpoenas to go to his dungeon and obtain from him any information which may enable him (the officer) to execute the process of the court, and that his return should show what steps had been taken, what inquiries made, from whom and where those inquiries were made, to find the prisoner’s witnesses; that it was not for the officer to assert merely they could not be found; he must state every fact which, in his opinion, justified the conclusion on his part they could not be found.
This done, said the court, and the return presented, it is for the judge then to decide whether there has been, on the part of the officer, that diligent search without which the prisoner might be deprived of a constitutional privilege and his life and liberty arbitrarily imperiled.
For the reasons assigned it is adjudged *378 and decreed that the verdict, sentence and judgment appealed from he avoided and reversed, and it is ordered that this cause he remanded to the court a qua for further proceedings according to law.