(70 South. 878)

No. 21750.

STATE v. CURTIS.

(Feb. 7, 1916.)

*(Syllabus by the Court.)*

1. GRAND JURY ⊚⟳22 — OATH ADMINISTERED TO GRAND JURORS—OFFICERS.

Article 160 of the Constitution, prescribing the oath to be taken by "members of the General Assembly and all officers," has no application to members of a grand jury, to whom the oath recognized by the common law is properly administered.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 60; Dec. Dig. ⊚⟳22.]

2. CRIMINAL LAW ⊚⟳598 — CONTINUANCE — ABSENCE OF WITNESSES—SUBPŒNA.

Where a defendant charged with a capital offense has done all that the law demands to entitle him to have his witness summoned, and, if necessary, brought into court by compulsory process, it is only in the event of its being shown by the return of the sheriff that the witness could not be found at the address furnished by such defendant, or, having been found, could not, for some sufficient reason, be brought into court, that defendant can legally be called on to make any other showing for a continuance, or can be forced to trial without his witness upon an admission by the state as to the testimony that the witness would give, if present. He cannot be made to suffer by reason of the failure of the clerk to fill out upon the subpœna issued to the witness the address furnished to the clerk.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1335–1341; Dec. Dig. ⊚⟳ 598.]

3. CRIMINAL LAW ⊚⟳1170½—APPEAL—CROSS-EXAMINATION OF ACCUSED.

Where, in the course of a criminal prosecution, a question is propounded by the prosecuting officer in the cross-examination of the defendant, who has taken the stand on his own behalf, to which defendant's counsel objects, and the objection is sustained, and the question remains unanswered, it would be doing an injustice to the intelligence of any jury to assume that they allowed the mere fact that an improper question was propounded to operate to the prejudice of the defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3129–3135; Dec. Dig. ⊚⟳ 1170½.]

Appeal from Twenty-First Judicial District Court, Parish of Point Coupee; C. K. Schwing, Judge.

Frank Curtis was convicted of manslaughter, and appeals. Reversed and remanded.

Hewes & Smith, of New Roads, for appellant. R. G. Pleasant, Atty. Gen., and J. H. Morrison, Dist. Atty., of New Roads (G. A. Gondran and J. B. Dawkins, both of New Orleans, of counsel), for the State.

MONROE, C. J. Defendant has appealed from a conviction of manslaughter (under an indictment for murder) and a sentence of imprisonment at hard labor for ten years. He brings the case up on four bills of exception, but it is suggested in the brief filed by the state that, under the authority of State v. Butler, 137 La. 525, 68 South. 859, and State v. Barrett, 137 La. 535, 68 South. 945, the appeal should be dismissed, for the reason that the bills were not signed by the judge until after the appeal had been granted. It appears, however, that they were properly reserved, and we find in the transcript two letters from the trial judge (to defendant's counsel and the prosecuting officer, respectively) in which the judge states, in effect, that the fault was his, and we do not think that the consequences should be visited on defendant; the action of the judge having been tantamount to the granting of time for the signing of the bills.

[1] 1. One of the bills was reserved to the overruling of a motion to quash the indictment; the ground of the motion being that grand jurors are "officers" within the meaning of article 160 of the Constitution, and that the foreman and members of the grand jury by which defendant was indicted did not take the oath prescribed by that article for "all officers." The article in question reads:

"Members of the General Assembly and all officers, before entering upon [the discharge of]

the duties of their respective offices, shall take the following oath or affirmation:

" 'I (A. B.) do solemnly swear * * * that I will support the Constitution and laws of the United States and the Constitution and laws of this state; and that I will faithfully and impartially discharge and perform all the duties incumbent on me as ———, according to the best of my ability and understanding. So help me God.' "

All of the Constitutions which have been adopted by the people of this state have prescribed a form of oath, varying but little from that above quoted, for members of the General Assembly and other officers, and, on the other hand, each of them has contained a provision continuing in effect the laws in force at the time of its adoption not inconsistent with its provisions. At the time of the adoption of the first Constitution (that of 1812) there was in force "An act for the punishment of crimes and misdemeanors," approved May 4, 1805, and section 33 of that act (2 Martin's Digest, p. 244), which has by special enactment been kept in force to the present time (R. S. of 1870, § 3990), reads, in part, as follows:

"All the crimes, offenses and misdemeanors hereinbefore named, shall be taken, intended and construed according to and in conformity with, the common law of England; and that the forms of indictment (divested however of unnecessary prolixity) the method of trial; the rules of evidence, *and all other proceedings whatsoever in the prosecution of said crimes, offenses and misdemeanors, changing what ought to be changed, shall be* except as is by this act, otherwise provided for, according to the said common law." (Italics by the court.)

The crime of murder was one of those to which the language above quoted refers, and, the administering of the oath to the grand jurors being a "proceeding in the prosecution" of that crime, it was required by the statute to be administered "according to said common law," and, so far as we are advised has been so administered from the time that the act of 1805 became operative to the present time. It is evident, therefore, that the framers of the various Constitutions (seven in number) which have been adopted since

that of 1812, the members of the General Assemblies which have kept section 33 of the act of 1805 in force during that period, the judges who have administered it, the lawyers who have contested, and the persons who have been prosecuted under it, have all acted in the belief that, in prescribing (by necessary inference) the common-law oath for grand jurors, that statute was not inconsistent with the provisions of the Constitutions which have prescribed another form of oath for members of the General Assemblies and other officers, or, in other words, that grand jurors were not to be regarded as officers within the meaning of those constitutional provisions; and, that being the case, we are of opinion that the construction so accepted and acted on should be adhered to, notwithstanding that in some other senses a grand juror may, perhaps, be regarded as an officer. The motion to quash was therefore properly overruled.

[2] 2. From the second and fourth bills reserved by defendant, and from the motion for continuance and statement per curiam connected therewith, it appears that defendant, through his counsel, furnished the clerk with a list of his witnesses, including two who resided together in Baton Rouge, and whose address he also furnished; that, when the case was called, he informed the court that he was not ready, for the reason that the witnesses mentioned had not appeared and had not been reported on; that the trial judge allowed him 15 minutes within which "to make a showing" for a continuance; that a motion was prepared setting forth the absence of the witnesses and due diligence to obtain them; that, if present, they would swear that they witnessed the affray in which deceased was killed, saw him draw his pistol and shoot defendant, and saw defendant, after he was shot, draw his pistol and discharge it, firing at deceased; that the witnesses had signified that they would tes-

tify if called; and that their presence could be obtained if a delay were granted during the then term of the court. The continuance was refused, on the ground that the motion failed to allege that the testimony sought to be obtained would not be cumulative, and that defendant's counsel had stated that they could not so frame it, for the reason that they could procure a witness who would testify to the same effect as the two whose presence was required. And the statement of the court is further as follows:

"On the trial of the motion counsel for the accused offered the written list of witnesses, setting forth names, surnames, and places of residence of the witnesses whom they desired to have subpœnaed. The clerk testified that he had received the list, that he immediately made out the subpœnas for the nonresident witnesses, and delivered same that evening to the sheriff, but that he failed to place upon the subpœnas the address which had been furnished him. The sheriff informed the court that he forwarded the subpœnas by mail to the sheriff of East Baton Rouge, who had phoned him that he could not find the witnesses. The court, in overruling the motion for a continuance, instructed the sheriff to send a deputy to Baton Rouge by auto with instructions to produce the witnesses in court during the day. During the day the sheriff informed the court that the sheriff of East Baton Rouge had phoned him that the street numbers given him were vacant lots. After the case had been closed, during the argument, the deputy sheriff who had been sent to secure the attendances of the witnesses phoned his chief that he had located the witnesses and was coming with them, but this fact was not communicated to counsel for the accused until after the sentence had been passed upon the accused and an appeal granted."

The bill 4 recites that during the trial counsel for the accused signified to the court that they had examined all the witnesses who were present; that they were not prepared to rest the case until the witnesses referred to in the motion for continuance had been produced; that the court ordered a recess of an hour to enable the sheriff to produce them, at the expiration of which delay, the witnesses not having been produced, counsel were required to proceed with the trial.

As we understand it, the deputy sheriff who was sent out with the address with which defendant had furnished the clerk, and which the clerk had failed to enter upon the subpœnas, found the two witnesses named in the subpœnas at that address, but the court ordered that the trial proceed before the return of the deputy with the witnesses, and without, as it appears to us, allowing a reasonable time for such return. We are of opinion that there was reversible error in that ruling, and also in the previous ruling requiring defendant to "make the showing for continuance" and to enter upon the trial. He had done all that the law demanded to entitle him to have his witnesses summoned, and, if necessary, brought into court by compulsory process, and it was only in the event of its being shown by the return of the sheriff that they could not be found at the address which he had furnished, or, having been found, that they could not, for some sufficient reason, be brought into court, that he could legally have been called on either to make the showing that was exacted of him or to proceed with the trial. Const. art. 9; R. S. 992; State v. Boitreaux, 31 La. Ann. 188; State v. Fairfax, 107 La. 624, 31 South. 1011; State v. Scott, 110 La. 369, 34 South. 479; State v. Richard, 127 La. 418, 53 South. 669.

[3] 3. The prosecuting officer asked defendant on cross-examination the question:

"After you had put in 60 days in jail here for carrying a concealed weapon, did you not beat a negro named Carr with a pistol?"

To which it was objected:

"That, the accused not having attempted to show that he possessed a good character, it was incompetent for the district attorney to establish that he had a bad one; that it was misconduct on the part of the district attorney to ask the question."

The objection having been properly sustained, the question was not answered, and we think it would be doing an injustice to the intelligence of any jury to assume that they allowed the mere fact that an im-

proper question was propounded to operate to the prejudice of the defendant.

For the reasons assigned in our consideration of the second and fourth bills, the verdict and sentence appealed from are set aside and the case is remanded to be further proceeded with according to law.