BOLIN, Judge.
Asserting the nullity of an appropriation for a servitude or right of way across his property for highway purposes, plaintiff sought an injunction against the defendant Police Jury and its members and employees restraining, enjoining, and prohibiting the construction of the proposed roadway. On presentation of plaintiff’s verified petition, a temporary restraining order was issued. After answer was filed, a hearing on a preliminary injunction was consolidated with a trial of the case upon its merits. From an adverse judgment, plaintiff prosecutes a suspensive, as well as a devolutive, appeal.
The proceedings under attack were conducted pursuant to the provisions of LSA-R.S. 48:492 et seq. which relate to the laying out of public roads by a jury of freeholders acting under an appointment of the parish governing authority.
A statement of the pertinent facts appears appropriate as a prerequisite to an enumeration and a discussion of the issues presented for resolution. During the year 1952, the Police Jury undertook the construction of a parish road known locally as Airline Drive. The first segment constructed began at Barksdale Boulevard (U. S. Highway 71) in Bossier City and extended to the Old Minden Highway. It was afterward extended to U. S. Highway 80. As originally intended, the project would have extended to Louisiana Highway 3, the Bossier City-Benton Highway, about five miles north of Bossier City. However, the Police Jury, in the meantime, sensed the need of an alternate route between Bossier City and Benton, the seat of Bossier Parish. Therefore, the Police Jury determined, in 1958, that the project should be extended to Benton.
Consideration of the extended project was undertaken by the Planning Committee of the Police Jury. Interested landowners were invited to a meeting and to make known their preferences as between possible routes. Of the landowners in attendance, 26 expressed a preference for the route through plaintiff’s property, two for an alternate route, and four apparently failed to express an opinion. In carrying out the expressed wishes of the majority present at the meeting, the Police Jury sought to obtain, and did obtain, necessary rights of way from all landowners through whose property the road would be constructed, except from plaintiff.
The construction of the roadway was begun and extended to both sides of plaintiff’s property. Between the two ends of the aforesaid construction, lay plaintiff’s property, having a width of 1240.8 feet, across which a right of way 80 feet wide and aggregating an area of 2.28 acres was sought. Still unable to obtain a right of way frota plaintiff, the Police Jury undertook the procedure now under attack to obtain the *234 necessary right of way. A jury of seven freeholders was appointed and, after taking the oath prescribed by the statute, the freeholders were duly organized and they elected, from their number, a chairman and a secretary. This jury met with plaintiff at the site of the property over which a right of way was sought. Engineers were employed and consulted relative to any drainage problems which might develop, through the construction, on plaintiff’s property.
A report of the freeholders was made to the Police Jury on October 3, 1962. In the report, it was recited that the roadway was laid out across plaintiff’s property, as shown on an engineer’s drawing attached to the report, and which roadway extended in a straight line connecting the two ends of the aforesaid project. Payment of damages in the sum of $1140 for the land taken and $570 for the crop standing thereon was recommended. At'a meeting of the Police Jury on November 13, 1962, the report was adopted by formal action of the Police Jury. The sum of $1710 was appropriated and directed paid to plaintiff.
It may be observed, however, that, on the appointment of the freeholders, plaintiff promptly entered objections with the Police Jury to the qualifications of those appointed. Nevertheless, the Jury of Freeholders proceeded with the task assigned to them. Tender of the aforesaid sum was refused by plaintiff, who thereafter instituted this action.
Although plaintiff contends there was no need for a right of way across his property, he relies primarily, for a reversal of the judgment, upon the contentions that the statutes upon which the proceedings were held, are unconstitutional, and that the members of the Jury of Freeholders were disqualified. These issues will be considered in the order enumerated.
The pertinent provisions of the Statutes LSA-R.S. 48:492 and 48:493 provide:

48:492.

“All roads shall be laid out by a jury of freeholders, consisting of not less than six inhabitants of the parish where the road is to be located, appointed for that purpose by the governing authority of the parish. The jury of freeholders shall trace and lay out each road to the greatest advantage of the inhabitants of the parish and with as little prejudice to inclosures as is possible.
“The members of the jury of freer holders shall take the following oath:
“ T, A. B., do solemnly swear that I will lay out the road now directed to be laid out by the governing authority of the parish of - to the greatest ease and advantage of the inhabitants, and with as little prejudice to inclosures as may be, without favor or affection, malice of hatred, and to the best of my skill and knowledge. So help me God.’ ”

48:493.

“Any person through whose land a public road is laid out may claim a just compensation therefor.
“The jury of freeholders shall assess the damages sustained by each person. All damages so assessed are parish charges and shall be paid by the parish treasurer.”
In LSA-R.S. 48:494, provision is made for a full judicial review of the action taken by a jury of freeholders.
In asserting the unconstitutionality of these sections of the statutes, plaintiff contends they are repugnant to Article 6, Sections 19 and 19.1 of the LSA-Constitution of 1921, and that the appropriation of his property constitutes a taking without due process of law, in violation of Article 1, Section 2 of the Constitution. A further contention is made that the aforesaid statutes constitute an unwarranted delegation of legislative, as well as of judicial, power.
On the question that the statutes are repugnant to the aforesaid constitutional provisions, it may be first pointed out that Article 6, Section 19 of the Constitution *235 of this State authorizes the establishment of a state system of highways and bridges. The language is clear and unambiguous and no claim is made that it applies to parish roads. Section 19.1 (Acts 1952, No. 54, also designated Section 19.2 in Dart’s Constitution) of the aforesaid article authorizes the creation of a state board of highways, and Section 19.1 (Acts 1948, No. 548) gives the Legislature authority to authorize the expropriation of property for highway purposes. The Legislature has seen fit to implement Section 19.1 (Acts 1948, No. 548) by the adoption of Act 107 of 1954 (LSA— R.S. 48:441-48:460), conferring upon the Department of Highways authority to acquire title, including servitudes, by means of a declaration-of-taking prior to judgment. Both Sections 19 and 19.1 of the-Constitution (Acts 1952, No. 54, also designated as 19.2 in Dart’s Constitution) apply exclusively to the State highway system. We have not been referred to any legislative action implementing Section 19.1 (Acts-1948, No. 548) of the Constitution so far as it relates to the acquisition of rights of way for roads by police juries.
The statutes herein concerned formerly constituted Sections 3369 and 3370 of the Revised Statutes of 1870; their source is found in the Acts of 1818. To determine that these sections of the statutes remained in effect after the adoption of the Constitution of 1921, it is only necessary to refer to Article 22, Section 1, relating to saving clauses, wherein it is stated:
“That no inconvenience may arise from the adoption of this Constitution, and in order to carry this Constitution into complete operation, it is hereby declared :
“First. That all laws in force in this State, at the time of the adoption of this Constitution, not inconsistent therewith, and constitutional when enacted, shall remain in full force and effect until altered or repealed by the Legislature, or until they expire by their own limitation.”
The statutes in question, having been neither altered nor repealed by the Legislature, are, therefore, as incorporated in the Revised Statutes of 1950, in full force and effect.
Nor do we find any merit in the contention that, under Article 1, Section 2 of the Constitution, the procedure authorized by these statutes constitutes a taking of property without due process of law. In this connection, an observation of the Supreme Court in Fuselier v. Police Jury of Parish of Iberia, 109 La. 551, 33 So. 597, 599-600, appears appropriate:
“The owner, over whose lands a public road is ordered laid pursuant to the authority of Rev.St. § 3369, has no just cause of complaint on the score of the ex parte character of the proceedings. Pie may have ‘his day in court.’ He is not bound irrevocably by the action of the police jury, nor by that of the jury of freeholders appointed to lay out the road and assess the damages. Section 3370, Rev.St., gives him the right to go into court and contest the action taken, and jurisprudence has recognized and vindicated this right.”
While the statutes concerned hera make no provision as to notice to a landowner, or as to his appearance before a jury of freeholders, it was held, in Police Jury of St. Martin Parish v. Kidder, 4 La.App. 296 (construing Revised Statutes Sections 3368 and 3370 [1870]), that the statutes contemplate that notice be given to the owner and that he be afforded an opportunity to appear before the Jury of Freeholders and to be heard on the questions concerning not only the necessity of the taking but also as to the course of the road and the damages to be paid before the right of way can be taken. Inasmuch as the Police Jury has the power to revise, correct, or change the recommendation of the Jury of Freeholders as to the course of the road, as well as to the amount of damages which should be paid, the statutes also contemplate that the owner be notified and af *236 forded an opportunity to appear before that body when consideration is given the report of the Jury of Freeholders and before action is taken thereon. All these formalities were complied with to the utmost detail. In fact, plaintiff was present on all of those occasions. The procedure followed fully complied with the basic law as relates to the essential elements of due process, that is, as notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. Charles Tolmas, Inc. v. Police Jury of the Parish of Jefferson, 231 La. 1, 90 So.2d 65.
A further contention is made that the provisions of the Statutes 48:492-48:494 are unconstitutional in that they attempt to delegate legislative and judicial powers in contravention of Article 2, Sections 1 and 2, and Article 7, Section 1 of the Louisiana Constitution. A jury of freeholders performs only a ministerial function and its action binds neither the landowner nor the Police Jury. The actual appropriation is by an action of the Police Jury, which action, however, is not final or irrevocable. Final decision, under LSA-R.S. 48:494, is specifically reserved to the courts as to the course of the road as well as to the amount of the damages. Thus, we perceive no unwarranted delegation of authority. The validity of such a proceeding, properly conducted, was recognized in the cases of Charles Tolmas, Inc. v. Police Jury of the Parish of Jefferson and Fuselier v. Police Jury of Parish of Iberia, supra.
That the members of the Jury of Freeholders should have taken the constitutional oath required by Article 19, Section 1 of the Constitution of 1921, instead of the statutory oath prescribed in LSA-R.S. 48:492, quoted hereinabove, is also the subject of an objection raised by plaintiff. We find no merit in this contention, rather we are constrained to hold a jury of freeholders is not comprised of officials coming within the contemplation of the constitutional requirement. Such a jury has no term of office and its duties are purely ministerial. Reasoning by analogy, it may be pointed out that the constitutional oath was held not to apply to grand jurors. State v. Curtis, 138 La. 911, 70 So. 878.
That the members of the Jury of Freeholders were not qualified to serve in this instance constitutes the basis of plaintiff’s final attack upon the proceedings leading to the appropriation of his property. The jurors were freeholders and inhabitants of the Parish, as required by the statutes. Nevertheless, plaintiff takes the position they were not qualified because of interest, bias, and prejudice, or by having taken some prior action in connection with and in furtherance of or in promotion of this project. We observe no attack is made upon the honesty and integrity of any of the members of the jury nor has fraud been alleged. As previously pointed out, that portion of Airline Drive constructed prior to the filing of this appropriation suit was not laid out by this Jury of Freeholders. We know of no legal reason why a parish police jury cannot lay out and construct roads without the services of a Jury of Freeholders where it can obtain the necessary rights of way by voluntary instruments. This is what was done in the instant case and the road was complete in every way except for the connecting portion between the two ends thereof leading up to Merritt’s property.
The fact that the freeholders owned property along the completed portion of Airline Drive or participated in some way in the completion thereof would not disqualify them per se from serving on this jury unless it were shown such facts or actions caused them to be biased or prejudiced for the limited duties imposed upon them in the instant proceedings. The only duty of this Jury of Freeholders was to recommend a way of connecting these two finished roads and fix the payment to the landowner. On making such recommendations these freeholders testified they acted without any bias or prejudice; that they visited the property; and that they acted upon sound engineering advice as to the location. *237 There is no serious contention that their recommendation as to compensation due to Merritt was not fair and adequate. Five of the seven freeholders testified during the trial below. Taking into consideration their testimony as well as the other evidence, the trial judge concluded there was no merit in plaintiff’s charges relating to the incompetency of the Jury of Freeholders. We are unable to find error in this factual determination of our esteemed brother below.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.
Affirmed.
AYRES, J., concurring.