## No. 6409.

## STATE vs. T. J. NEWHOUSE AND A. NEWHOUSE.

In the selection of the persons from whom the regular juries shall be drawn for the trial of cases in the Superior Criminal Court for the parish of Orleans, the jury commissioners appointed under the law to make the selection, can not delegate that duty to any other person.

The jury commissioners must themselves make the selection, and *must* make it from *all* the qualified voters of the parish of Orleans.

Their mere approval of a selection made by some one else, can impart no validity to the selection.

A jury commissioner who has accepted another office, and qualified in it, is thenceforth constitutionally disqualified from serving as a jury commissioner.

APPEAL from the Superior Criminal Court.    *Steele, J.*

*H. N. Ogden*, Attorney General, for the State.

*Cullom & Castellanos*, for T. J. Newhouse, defendant and appellant.

The opinion of the court was delivered by

SPENCER, J. The defendants were indicted, and tried at the April term 1876 of the Superior Criminal Court, for murder. The verdict of the jury was not guilty as to A. Newhouse and guilty of manslaughter as to T. J. Newhouse, who was accordingly sentenced to twenty years hard labor. He appeals and presents various grounds for reversal of said verdict and sentence. We shall notice but two of them.

The fifth section of act No. 124 of 1874 provides:

· "Be it further enacted, etc., That on and after the first day of April, 1874, all grand and petit juries in the district courts, civil and criminal, for the parish of Orleans, shall be drawn pursuant to the provisions of this act, as follows: There shall be two jury commissioners, to be selected from the qualified voters of the parish of Orleans, and appointed by the Governor, who shall hold their offices and be removable at the pleasure of the Governor. The commissioners shall receive for their services five hundred dollars, each, per annum, payable quarterly by the city of New Orleans. They shall select impartially from the citizens of the parish of Orleans having the qualifications requisite to register as voters, the names of not less than five hundred good and competent.

men; a list of whose names shall be made out and returned certified under their hands to the clerk of the Superior Criminal Court, to be filed by him in his office; said list shall be kept complete and supplemented from time to time. Each of the names on said list, and all supplemental lists shall be written out by said clerk on a separate slip of paper, together with the place of residence of each person, and the slips of paper on which shall be written the names and places of residence of persons on the said list, shall be placed in a box or wheel to be kept for that purpose by the sheriff of the court, and ten days before the expiration of every month in which the said Superior Criminal Court shall hold its sessions, the said commissioners together with the criminal sheriff, shall proceed to draw from said box or wheel not less than forty-eight names, and the persons whose names shall be so drawn, shall constitute the petit jury for the month or session of the court succeeding such drawing," etc.

Before proceeding to trial the accused challenged the array of petit jurors, and moved to quash and set aside the venire, on various grounds, among which were these:

First—That the names from which the venire was drawn and out of which the petit jury was composed, were not selected by the jury commissioners, but that a list of over two hundred names was furnished by one Lionel Adams to said commissioners, and said names were put into the wheel from which said venire was drawn.

Second—That in the said wheel at the time said venire was drawn, there were names of persons selected by James Lewis and Smallwood as jury commissioners, at a time when said Lewis was not a jury commissioner, he having months before resigned said office and accepted that of police commissioner, both offices being of trust and profit.

Both of these objections were we think clearly shown to be true in point of fact. It seems that the commissioners to lighten their labors asked Adams to furnish them a list of two or three hundred names for the jury wheel, which he did. The commissioners in their testimony state that they looked over and approved this list after Adams prepared it. The district judge was of opinion that this was a substantial compliance with the statute and that the commissioners by approving, made the list their own selection. We do not think so. To so hold would be equivalent to affirming that the commissioners could act by proxy or deputy in the performance of their very important and grave duties. Nothing in the statute justifies such an inference. Much less could their functions be performed by a person like Mr. Adams, who was, as it were, a mere bystander, under none of the obligations of an officer, or even of an agent or proxy. It is manifest that there would and could be no security for the accused against packed juries, if they be selected in this loose

way. The intent of the law was that two responsible and competent men should, under the appointment of the Governor and under the sanction of an oath, select *from all the voters* of the parish, a list of persons to serve as jurors; that they should inspect and select from the names of all the voters, and not simply *inspect and approve* what might be " a cut and dried " list of two or three hundred names. Such a system is too liable to abuse to be tolerated or sanctioned by courts charged with the lives and liberties of the citizen.

It seems that James Lewis was one of the jury commissioners up to August 1875, when he tendered his resignation and was appointed a police commissioner by the Governor, with a salary of $2000 per annum. His salary as jury commissioner was five hundred dollars per annum. He in August 1875 took the oath, and qualified as police commissioner and entered fully upon the duties of his new office. But as the Governor did not appoint his successor as jury commissioner he continued to act as such also up to and including February 1876, drawing the salary of both offices.

The 117th article of the constitution declares that "no person shall hold or exercise, at the same time, more than one office of trust or profit, except that of justice of the peace or notary public."

In the case of the People vs. Carrique 2 Hill 93 the Court of Errors and Appeals of New York held: "The appointment of a person to an office incompatible with one held by him is valid and he has a right of election between the two. If he accepts, take the oath and enter on the duties of the second office, the first is absolutely determined."

The constitution declares all offices of trust or profit incompatible with each other, when held by the same person, except one of them be justice of the peace or notary public.

By accepting and entering upon the duties of the office of police commissioner James Lewis ceased, *ipso facto*, to be a jury commissioner. And it appearing that the wheel from which the venire in this case was drawn, did, at the time of said drawing, contain the names of persons placed there by James Lewis after he ceased to be a commissioner, the venire was unlawful.

Article 122 of the constitution, directing that all officers "shall continue in the discharge of their duties, until their successors are qualified," has no application to a case like this, where the office has been absolutely vacated. The absurdity of such an application of it, will be made manifest by illustration: Should the Chief Justice of this court be elected Governor, could he fill both places until he saw proper to appoint his own successor on this bench ? We conclude therefore that the challenge of the array and the motion to quash the venire, *made before trial and in limine*, should have been sustained.

It is therefore ordered adjudged and decreed, that the verdict and sentence appealed from be set aside and annulled and it is further ordered that this cause be remanded to the court *a qua* for a new trial, according to law.