(66 South. 196)

No. 20682.

STATE v. BAIN.

(June 29, 1914.)

*(Syllabus by the Court.)*

1. GRAND JURY (§ 8*)—JURY—JURY COMMISSIONER—SELECTION OF JURORS.

The office of jury commissioner is ipso facto vacated when the incumbent accepts another office, state, parish, or municipal; and the subsequent selections, by the members of the commission and the clerk, with the participation of the person who has thus ceased to be a commissioner, of persons to serve as jurors, are illegal, and vest in the persons selected no authority to sit, as jurors, in judgment upon questions involving the lives, liberty, and property of others.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 16–20; Dec. Dig. § 8.*]

2. GRAND JURY (§ 8*)—SELECTION OF JURORS—"IRREGULARITY."

Where a person who has ceased to be a jury commissioner has nevertheless participated in the selection of persons to serve as jurors and in the placing of names on the general venire list and in the general venire box, and thereafter, upon the appointment of his successor, the jury commission, as thus completed, takes no action whatever in regard to such names, but merely leaves them as it finds them, and supplements the list and box by the addition of the names of persons to take the places of those who have served, died, removed from the parish, or become otherwise disqualified, a grand jury, constituted in part of persons whose names were thus left and found, is illegally constituted, and an indictment brought in by it should be quashed on motion; the cause of complaint not being an "irregularity," within the meaning of section 15 of Act No. 135 of 1898, but being a jurisdictional matter affecting the legal composition, existence, and power of the tribunal before which the complainant is prosecuted.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 16–20; Dec. Dig. § 8.*

For other definitions, see Words and Phrases, vol. 4, pp. 3768–3771; vol. 8, p. 7693.]

O'Niell, J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Robert Bain was convicted of carnal knowledge, and appeals. Reversed and remanded.

S. W. Gardiner, of Ville Platte, for appellant. R. G. Pleasant, Atty. Gen., and R. Lee Garland, Dist. Atty., of Opelousas (G. A. Gondran, of New Orleans, of counsel), for the State.

MONROE, C. J. Defendant, having been convicted of carnal knowledge, and duly sentenced, presents his case to this court by means of bills of exception to the overruling of his motions to quash the indictment and for new trial. The matter of which he complains arises out of the following situation, as disclosed by his motion to quash, and the evidence adduced in support of the same, made part of his bill of exception, to wit:

[1] Louis Bacon was appointed jury commissioner of the parish of Evangeline in March, 1911, and held that position, as the legal incumbent, until May 20, 1913, when he accepted the office or offices of tax collector and street commissioner of the village of Mamou, and qualified by taking the required oath and giving bond. He continued, nevertheless, to discharge the functions of jury commissioner, and in October, 1913, participated in supplementing the general venire list with 33 additional names, in selecting the names of 20 persons from whom 12 were to be, and were chosen to serve as grand jurors, for six months, and in drawing the names of 30 persons for service as petit jurors; and again in February, 1914, he participated in supplementing the general list with 91 names, and in drawing the names of persons for service on the petit juries. It appears, then, to have been discovered that he had ceased to be a jury commissioner when he accepted the other offices, and several indictments which had been brought in by the grand jury, the members of which he had participated in selecting, were quashed on that account, as was also the last panel that he had participated in drawing from the general list for service on the petit juries. Thereupon, on March 17th the trial judge formally revoked his appointment as jury commissioner, and appointed another person in his stead; and the jury commission, thus newly constituted, proceeded on March 30th to supplement the general list by the addition of some 36 names, to select, from the whole number then on the list, the names of 20 persons from whom the members of the new grand jury were to be, and were, chosen, and to draw the names of 30 persons for service on the petit juries;. and on May 5th the grand jury, chosen from the members thus selected, and of whom at least 5 were persons whose names had been placed upon the general list with the participation of Louis Bacon, after he had ceased, in law, to be a member of the jury commission, brought in the indictment under which defendant was prosecuted. In the motion to quash it was alleged: That 124 names, in the selection of which Louis Bacon had thus illegally participated, had been left in the box; that the newly constituted commission had added but 36 names; that it had selected the lists for service on the grand and petit juries from the mass; that the mass and all that emanated from it were illegal; and that the court had so held in quashing the indictments and setting aside the petit jury list, previously brought in. The facts were shown to have been as alleged in the motion, but the trial judge was of opinion that the matters complained of were "irregularities," which, under sections 15 and 16 of Act 135 of 1898, did not vitiate the proceedings; and that it would have been an idle form for the newly constituted commission to have taken from the box the 124 names that had been illegally put into it, only to put them back again; and the motion was accordingly overruled. The law, however, requires that persons who are to become jurors, and, as such, components of a tribunal vested with power to sit in judgment upon questions involving the lives, liberty, and property of others, shall be selected by "five discreet citizens, good men and true,"

who themselves shall be appointed by the judge, and who, together with the clerk of the court, or his deputy, shall constitute and act as a commission; and that, before entering upon the discharge of their duties, the persons thus appointed shall take an oath faithfully to discharge the duties imposed upon them. Act 135 of 1898, § 3, p. 218. The Constitution (article 170) prohibits the holding of more than one office of trust or profit (save those of justice of peace or notary public) at the same time. The act above cited declares that "no person holding any office under the state or any parish or municipality therein shall be competent to hold the office of jury commissioner;" and this court has repeatedly held that the acceptance of an office operates ipso facto to vacate another office of which the acceptor is the incumbent (State v. Fuselier, 51 La. Ann. 1319, 26 South. 264; State v. Scott, 110 La. 369, 34 South. 479), the doctrine stated having been applied (in State v. Newhouse, 29 La. Ann. 824), to the case of a jury commissioner who accepted another office. It was also held, in the case last above cited, that where a venire is drawn from a wheel containing names, some of which were placed therein by a person who acted as jury commissioner, after he had vacated that office by the acceptance of another, the venire was unlawful; and, in still other cases, it has been held that when a person, not a commissioner, intrudes upon the deliberations of the commission, takes part in them, and does acts which it is the duty of the commissioners to perform, such acts are not those of the commissioners, but are the acts of one who has no authority to perform them, and that the proceedings are null and void and are not "irregularities," within the meaning of section 10 of Act 44 of 1877 (which is the prototype of section 15 of Act 135 of 1898). State v. Taylor, 43 La. Ann. 1131, 10 South. 203; State v. Clavery, 43 La. Ann. 1133, 10 South. 203.

There can be no doubt, then, that when the jury commission, as completed, or newly constituted, by the appointment of Louis Bacon's successor, entered upon the discharge of its functions, the names which Bacon had participated in putting on the general venire list and in the general venire box were there illegally, and that the illegality of their presence was not cured by the mere appointment of a new member of the commission. We shall not go so far as to say that, as thus completed, the commission might not have canvassed those names, and, determining, upon such consideration, that the bearers were competent, good, and true men, have replaced or left them where they found them, though in one of the cases cited, where it appeared that the commissioners, in order to lighten their labors, had requested a third person to furnish them a list of several hundred names, and had accepted and used a list so furnished, it was said that to hold such action to be a substantial compliance with the law would be equivalent to holding that the commissioners could act by proxy, but that it was the intent of the law that competent and responsible men— "under the appointment of the Governor, and under the sanction of an oath, select from all the voters of the parish a list of persons to serve as jurors; that they should inspect and select from the names of all the voters, and not simply inspect and approve, what might be 'a cut and dried' list of 200 or 300 names." State v. Newhouse, supra.

According, however, to its procès verbal, the completed or newly constituted commission took no action whatever in regard to the names that it found on the general list and in the general venire box, but left them as it found them, and merely added 36 names to supply the places of those the bearers of which had died, or removed from the parish, or become otherwise disqualified; and absolutely nothing, so far as we can discover, was done which can be said to have cured the illegality in the original selection of the 124 names by incompetent and unauthorized persons.

The procès verbal reads in part as follows:

"Be it remembered that on this 30th * * * March, * * * 1914, we, * * * jury commissioners, * * * clerk, * * * in the presence of * * * witnesses, * * * proceeded to examine the general venire box and to strike from the list thereof and remove therefrom the names of 30 persons who were drawn to serve as petit jurors * * * from the general venire list last supplemented; and we thereupon proceeded to supplement the general venire box and the general venire list to its requisite quantum of 300 names, * * * being the following."

And then follows a list of names and a recital of the fact that the commission adjourned until the following day, when they again assembled, and selected, from the "general venire of 300 names," the names of 20 persons, from whom the grand jury was to be drawn, and the names of 30 persons, for service on the petit juries.

[2] It seems clear, therefore, as defendant was indicted by a grand jury composed of persons illegally selected, and was tried and convicted by a petit jury, similarly composed, that he has not been tried and convicted according to law, and that his cause of complaint is not an "irregularity," such as is contemplated by section 15 of Act 135 of 1898, but is jurisdictional, and affects the legal composition, existence, and power of the tribunal before which he was prosecuted.

It is accordingly ordered that the conviction and sentence herein be set aside and that this case be remanded, to be proceeded with according to law.

See dissenting opinion of O'NIELL, J., 66 South. 197.