(78 South. 663)

No. 22912.

STATE v. JOSEPH.

(April 29, 1918.)

*(Syllabus by the Court.)*

1. CONSTITUTIONAL LAW ⊜⇒13 — STATUTES ⊜⇒183—LITERAL INTERPRETATION.

In the construction of laws, whether constitutional or statutory, a court is not bound to a literal interpretation, where it would lead to an absurdity or to a plain violation of the spirit and purpose of the enactment.

2. OFFICERS ⊜⇒30—FORFEITURE—CONSTITUTIONAL PROVISIONS.

Article 164 of the Constitution is not to be interpreted as meaning that a citizen, holding a state office, upon whom under the Constitution and laws of the United States, the President, in aid of a great and necessary war, imposes additional duties, forfeits such office by reason of his acceptance of that which it would be unlawful and unpatriotic for him to decline.

3. OFFICERS ⊜⇒30 — VACATION OF OFFICE— ACCEPTANCE OF ANOTHER OFFICE.

A clerk of a district court and ex officio jury commissioner does not vacate those positions by accepting an appointment as a member of a "local board," provided for under Act Cong. May 18, 1917, c. 15, 40 Stat. 76, known as the "Selective Service Act."

4. CRIMINAL LAW ⊜⇒1166(2)—GRAND JURY— FAILURE TO IMPANEL.

The Constitution (article 117) provides that a grand jury shall be impaneled in each parish (except Cameron) twice a year, but it also provides that a grand jury, once impaneled, "shall remain in office until a succeeding grand jury is impaneled"; hence the failure of the judge to impanel a grand jury at the expiration of six months does not, of itself, call for the reversal of a conviction.

5. JURY ⊜⇒64 — GENERAL VENIRE — NUMBER OF NAMES.

The law does not require that 300 names shall be placed at one time in the general ve-

nire box after it is once so filled; the requirement is that the names in the box shall be supplemented from time to time, so as to keep 300 names there from one session of court to another.

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Bye Joseph was convicted of rape, and he appeals. Affirmed.

L. Austin Fontenot, of Opelousas, and J. Hugo Dore and S. W. Gardiner, both of Ville Platte, for appellant. A. V. Coco, Atty. Gen., and R. Lee Garland, Dist. Atty., of Opelousas (Vernon A. Coco, of New Orleans, of counsel), for the State.

### Statement of the Case.

MONROE, C. J. Defendant, having been indicted on October 6, 1917, for rape, and called for trial, challenged the array of petit jurors on the grounds:

(1) That O. E. Guillory, who participated as clerk of court and ex officio jury commissioner in the drawing of the jurors, had thereafter been appointed a member of the "local board," created by the act of Congress of May 18, 1917, and by his acceptance of that federal office had, ipso facto, vacated the state offices held by him, by reason whereof and of his participation therein the drawing in question was illegal and of no effect.

(2) That in drawing the grand and petit jurors for service in October, 1916, and 1917, the commissioners merely supplemented the names in the general venire box, whereas they should have emptied the box and put in 300 names for the October term of 1917, and their failure so to do operated a legal fraud and injury to defendant.

The challenge was overruled, and defendant, having been tried, convicted, and sentenced, prosecutes this appeal.

### Opinion.

[1-3] Defendant's counsel invoke article 164 of the Constitution and Act No. 13 of 1912 in support of the ground first above stated as calling for the quashing of the venire. The article reads:

"No member of Congress, nor person holding * * * any office of trust or profit under the United States, or any state, or under any foreign power, shall be eligible as a member of the General Assembly, or hold or exercise any office of trust or profit under the state."

The act is entitled:

"An act to enforce article 170 of the Constitution, * * * declaring that 'no person shall hold or exercise, at the same time, more than one office of trust or profit, except that of justice of the peace, or notary public,' and providing penalties for the violation of this act."

And it is declared in the text that, with the exception of justices of the peace and notaries public, every person holding an office, whether in the legislative, executive, or judicial branches of the state government, under the parishes or municipalities, or certain state, parish, or municipal boards or institutions, or the United States, or foreign countries, is to be considered an office holder, within the meaning of the act; that no person shall hold or exercise, at the same time, more than one office of trust or profit, except that of justice of the peace or notary; that any person, who while holding one office shall accept another, shall, "by the very fact of such acceptance of said second office, lose all right, power and authority to exercise the duties or receive the emoluments of the first office" (section 3), shall be conclusively presumed to have vacated said first office, and shall, in the event of such acceptance and of his thereafter exercising the duties and receiving the emoluments of the first office be guilty of a misdemeanor, and, on conviction, be punished by fine and imprisonment.

It had been held by this court, however, that articles of previous Constitutions, practically identical in meaning with article 170 of the Constitution of 1898, were confined in their application to state officers, and did not apply in cases of persons holding, at the

same time, state and municipal offices (Dorsey v. Vaughan, 5 La. Ann. 156; State v. Taylor, 44 La. Ann. 783, 11 South. 132); and since the passage of the act it has been held, in view of that interpretation of the article mentioned, or its equivalents, that the act is broader than its title, and goes beyond the article that it was intended merely to enforce. State v. Martin, 133 La. 1098, 63 South. 598; State v. Phenix, 134 La. 329, 64 South. 129.

On the other hand, the jurisprudence is uniform to the effect that the position of jury commissioner is a state "office," and with the possible exception of the case of State v. Sadler, 51 La. Ann. 1397,[1] is uniform to the effect that the acceptance of any other state office vacates that of jury commissioner, and vice versa, that the acceptance of the office or jury commissioner vacates any other state office. State v. Newhouse, 29 La. Ann. 824; State v. Arata, 32 La. Ann. 193; State v. Dellwood, 33 La. Ann. 1229; State v. West, 33 La. Ann. 1261; State v. Beaird, 34 La. Ann. 104; State v. Nockum, 41 La. Ann. 689, 6 South. 729; State v. Scott, 110 La. 369, 34 South. 479; State v. Bain, 135 La. 776, 66 South. 196.

If, then, article 170 applies only to state offices, and Act No. 13 of 1912 purports only to carry that article into effect, it is evident that neither the article nor the act have any application in this case, and we therefore revert to article 164, as not only the law which, if there be any, is here applicable, but as that which alone is invoked by defendant. Construing that article literally, as do the learned counsel for defendant, it no doubt furnishes support for their contention, but, as was said by this court in Landry v. Klopman, 13 La. Ann. 345, holding that clause 3 of section 2 of article 4 of the Constitution of the United States (which required the delivery of a runaway slave to his owner)

[1] 26 South. 390.

should not be construed as requiring such delivery in the case of a slave who had been arrested, under the law of the state to which he had escaped, and, after due advertisement, sold for the benefit of the owner.

"In the determination of constitutional questions, the same rules of interpretation may be resorted to as with other laws. The duty imposed upon the judiciary to discover the spirit and intention of the lawgiver or the true meaning of the instrument is not less imperative than in case of statutes. It is only a labor of greater delicacy, because * * * the principles involved underlie our social structure, are fundamental, and affect more extensive interests.

"But an adherence to the letter and a violation of the spirit of the instrument ought not to be tolerated or supposed possible."

And the court cites, by way of illustration, the case of a slave who, while a fugitive, may have committed murder, or other high crime, in the state to which he had fled, and who yet must have been given up to his master, according to the letter of the constitutional provision in question.

In the instant case it may well be conceived that article 164 of our Constitution was not framed with reference to the existence of a state of war, when it would become necessary for the federal government, in the exercise of the power conferred and of the obligation imposed upon it by the Constitution of the United States, for the preservation of our system of government and the protection of humanity, to avail itself of all the resources at its command, and an exception must be read into that article and into every article of every state Constitution which may be construed as obstructing the exercise of that power and the discharge of that obligation, for the Constitution of the United States is the paramount law of the land, and it confers upon the Congress the power "to provide for the common defense"; to "declare war"; to "raise and support armies"; "to provide for calling forth the militia to execute the laws of the Union"; "to provide for organizing, arming, and disciplining the

militia and for governing such part of them as may be employed in the service of the United States"; and "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers." Const. U. S. art. 1, § 8. And, in the exercise of the powers so conferred, the Congress has enacted the statute known as the "Selective Service Law," which provides for the conscription of citizens of the country for military service at home and abroad, and the conscription, it may be said, of state officers and citizens for the discharge of certain functions connected therewith, as follows:

"Sec. 4. * * * The President is hereby authorized, in his discretion, to create and establish throughout the several states and subdivisions thereof * * * local boards," etc.

. * * * * * * * *

"Sec. 6. * * * The President is hereby authorized to utilize the service of any or all departments and any or all officers or agents of the United States and of the several states * * * in the execution of this act, and all officers and agents of the United States and of the several states * * * and all persons designated or appointed under regulations prescribed by the President, whether such appointments are made by the President himself or by the Governor or other officer of any state, * * * to perform any duty in the execution of this act, are * * * required to perform such duty as the President shall order or direct," etc.

In the case of Arver v. U. S., 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. 349, the Supreme Court of the United States, after an exhaustive consideration of the question of the power of the United States to enforce conscription for military service, disposed of the question of its power to call upon state officials for services to be rendered by them as follows:

"It remains only to consider contentions which, while not disputing power, challenge the act because of the repugnancy to the Constitution supposed to result from some of its provisions: First, we are of opinion that the contention that the act is void as a delegation of federal power to state officials, because of some administrative features, is too wanting in merit to require further notice."

The question in this case then is should article 164 of our Constitution be interpreted to mean that a citizen, holding a state office, upon whom, under the Constitution and laws of the United States, additional duties are imposed by the President in aid of the raising and maintenance of an army for the prosecution of a great and necessary war, forfeits his office by reason of his acceptance of that which it would be unlawful and unpatriotic for him to decline?

We think not, and are of opinion that, to answer otherwise would be an unwarranted reflection alike upon the intelligence and the patriotism of those by whom the article in question was incorporated in the Constitution.

In that same connection it may be observed that Act No. 135 of 1898 was made a law by a legislative body, which assembled immediately upon the adjournment of the convention by which the Constitution of 1898 was adopted, and was composed largely of members who had been members of that convention. It is a general statute establishing a jury system, and, among other things, provides for the creation of jury commissions as follows:

"Sec. 3. * * * That the several district judges throughout the state, the parish of Orleans excepted, shall select and appoint five discreet citizens and good men and true, able to read and write the English language, who, with the clerk of the district court, or in case of the inability of said clerk to act for any cause his chief deputy, as a member thereof, ex officio, shall constitute a jury commission," etc.

So that, according to a literal interpretation of article 164, the clerks of the district courts have been holding two state offices ever since the Constitution was adopted, and yet, with all its versatility and ingenuity, the bar of the state has never considered that the clerks have forfeited their offices by taking upon themselves the additional burden thus imposed upon them; the reason, no doubt, being that, though the position of

ex officio jury commissioner is, in one sense, an additional office, it is, in another sense, and the sense in which the statute is to be taken, merely an additional burden imposed upon the clerk; and so it may be said with regard to the position of member of the "local board." In one sense, it is an office; in another—the sense of the law authorizing the President to avail himself of the services of a state officer—it represents merely an additional duty which the clerk, as an officer best qualified therefor, is called upon to perform.

We therefore conclude that the ground thus considered—relied on by defendant as supporting his challenge—is not well taken.

[4, 5] 2. Nor is defendant more fortunate with respect to the other ground upon which his challenge was based. It is true that article 117 of the Constitution provides that a grand jury shall be impaneled in each parish (except Cameron) twice a year; but it also provides that the grand jury, once impaneled, "shall remain in office until a succeeding grand jury is impaneled," and we find no requirement, either in the Constitution or the statutes, that 300 names shall be placed in the general venire box at one time after the first occasion. The requirement on that subject is that:

"The commission shall then (certain specified times) supplement the original list and the ballots in the box with the names of the same number of good and competent men * * * as have been taken from the box and erased from the list, so as to keep the number of names in the general venire box and on the jury list at the original standard of 300 contained therein." Act No. 135, § 6, of 1898.

There is no suggestion that there were not 300 names in the box at the opening of the term at which defendant was tried, nor is any prejudice to the defendant, as resulting from the failure of the court to impanel a grand jury twice a year, shown, or attempted to be shown. Unquestionably, the judges should comply with the law, but a failure so to do in a particular instance, which works no injury to a defendant in a criminal case, does not, necessarily, mean that he is to be discharged.

Finding no error in the rulings complained of, the conviction and sentence appealed from are affirmed.