LANDRY, Judge.
The present appeal involves the validity of the suspension of John E. Coon, State Fire Marshal (an employee in the “unclassified service” of the State of Louisiana), as well as that of A. H. May, Jr., Deputy Fire Marshal Field Supervisor (a “classified employee” subject to state civil service rules and regulations), from their respective positions upon decree of the State Civil Service Commission (for purposes of brevity sometimes hereinafter referred to simply as “the Commission”), pursuant to the investigatory power and authority allegedly possessed by the Commission by virtue of the provisions of Article XIV, Section 15, Paragraph (O) (4) of the state constitution known as the Civil Service Amendment (hereinafter sometimes referred to merely as “the amendment”) .
The suspensions ordered by the Commission were for a period of 10 working days in the case of Coon and 5 working days with respect to May, predicated upon alleged violations of Civil Service Rules and Regulations and the Civil Service Amendment of the Constitution. As set forth in the opinion of the Civil Service Commission rendered herein, the statement of this case is as follows:
“Activated by an item in a Baton Rouge newspaper suggesting that an employee of a private corporation was also drawing full pay from the State as a classified employee in the Office of the Fire Marshal of the State of Louisiana, the Director of the Department of State Civil Service, as was his duty, initiated an investigation to ascertain the facts.
*114 “Shortly after the publication and the institution of the Director’s investigation, the employee resigned his classified position in the State service.
“The investigation by the Director developed probable violation of the Civil Service Amendment, and of the Rules adopted pursuant thereto, and due notice was given to John E. Coon, Fire Marshal, to A. H. May, Jr., a classified employee occupying the position of Deputy Fire Marshal Field Supervisor, and to Gibson O. Kimberlin, the former employee, that this Commission would hold a public hearing as authorized by Paragraph (O) (4) of the Civil Service Amendment to investigate possible violations of the Civil Service Law and Rules, in connection with the employment of said employee as a Deputy Fire Marshal I. The notice directed attention particularly to possible violation of Paragraphs (N) (2) and (N) (4) of the Amendment and of Rules 14.1(a), 14.2 and 1S.2. The paragraphs of the Constitution and of the Rules referred to were quoted in full in the notice.
“Briefly, and so far as made pertinent by the evidence, the provisions referred to are as follows:
“(N) (2) and Rule 14.1(a): No person shall be appointed to any position in the State Classified Service, or in any way favored with respect to such employment because of his political affiliations.
“(N) (4): No person shall make any false statement, with regard to any appointment under any provision of the Civil Service Amendment, or in any manner commit or attempt to commit any fraud preventing the impartial execution of said Amendment and Rules.
“14.2: Employees and State officials are under duty to report promptly any violation of Rule 14 to the Director (of the Department of State Civil Service) who must investigate and report his findings to this Commission.
“15.2: Requires appointing authorities to certify on each payroll or subsidiary documents that each employee thereon rendered actual service, the actual number of hours of attendance on duty, and the number of hours of absence from duty.
“The public hearing was held before the full Commission on February 21, 1961. The Fire Marshal and his Field Supervisor were represented by personal counsel, and the attorney for the Office of the Fire Marshal was present ‘to assist in the defense.’
“The Department of State Civil Service was represented by its counsel.”
The respective positions of the Department of Civil Service of the State of Louisiana and the Civil Service Commission in this matter are somewhat anomalous. The original investigation initiated by the Commission by authority of Paragraph (O) (4) of the Civil Service Amendment was not intended to be an adversary proceeding. Nevertheless, the record clearly shows that counsel for the Department of Civil Service of the State of Louisiana conducted the prosecution of the appellants whose conduct was under inquiry. He was permitted to call witnesses, examine and cross-examine witnesses, object to testimony and testify. He had apparently gathered evidence for use at the hearing. In short, the entire proceeding was prosecuted by the Department.
In this Court, however, the Department appears through its same counsel, as Amicus Curiae, presumably to preserve its status as an agency distinct from and independent of the Commission which has on occasion suggested that it has no interest in defending its own decisions before an appellate court. See Per Curiam in Hays v. Wildlife and Fisheries Commission rendered by this court the 18th day of December, 1961, and reported in 136 So.2d 559.
*115 The facts as found by the Commission are as. follows:
“By a letter of August 19, 1960, the Fire Marshal acknowledged receipt of a Civil Service application form from Kimberlin in connection with his provisional appointment as Deputy Fire Marshal I as of August 18, 1960.
“On that date and thereafter until October 8, 1960, the Department of State Civil Service had an adequate list of eligibles for employment as Deputy Fire Marshal I in the Baton Rouge area. Kimberlin’s name was not among these eligibles. He became eligible following an examination held October 8, 1960.
“The provisional employment of Kimberlin effective as of August 18, 1960, was made without regard to the eligible list. The Department of State Civil Service declined to approve the employment as the Rules do not allow provisional appointment when eligibles are available. Relying upon the representations of the Fire Marshal that an emergency existed requiring the immediate employment of several Deputy Fire Marshals I, the Department of State Civil Service approved Kim-berlin’s appointment for 30 days to give the Fire Marshal time to interview the eligibles. At the request of the Fire Marshal the emergency appointment was twice extended, and finally terminated as of October 31, 1960. Meanwhile Kimberlin had successfully taken the examination for the position of Deputy Fire Marshal I and was given a probational appointment as such as of November 1, 1960.
“It is undisputed that Kimberlin ‘signed the payroll and drew his money’ as Fire Marshal I from August 18, 1960, until his resignation on January IS, 1961, without ever performing any of the duties prescribed for the position. He never appeared at the Office of the Fire Marshal. May, the Field Supervisor with jurisdiction over all Deputy Fire Marshals I, met Kimberlin for the first time at this hearing. Kimberlin filed no activity reports as required of all other employees holding similar positions, and no written report of any activity whatsoever on behalf of the Fire Marshal. He was never called upon to perform any service. During the entire period of his employment as Deputy Fire Marshal I, he occupied the position of Chemist with a private corporation, at Baton Rouge, working normally from 7:00 a. m. to 3:1S p. m. five days a week, at a monthly salary of $750.00.
“The Fire Marshal approves the payroll of his employees and he signs the pay checks. The records of his office certified by the payroll clerk to be a. true and correct copy of the attendance and leave record relating to Kimberlin falsely show that Kimberlin worked 8 hours for 9 days in August, 21 days-in September, 21 days in October, 18-days in November, and 20 days in. December, 1960.
“As a witness the Fire Marshal admitted that Kimberlin performed none of the duties of a Deputy Fire Marshal I, and that he ‘never did have to-call on him for anything.’
“The- Field Supervisor of all Deputy-Fire Marshals I testified that he approved the time and attendance reports, submitted by Kimberlin from August 18 through January 15, although he never talked to him about his work, and never assigned any duties to him. He did not know the exact details of the assignment the Fire Marshal had given-Kimberlin. The latter was never placed under his supervision, and he merely followed instructions of the Fire Marshal relative to the employment and duties of Kimberlin.”
With regard to A. H. May, Jr. the Commission held as follows:
“Considering the employment security afforded him by the Civil Service- *116 Amendment and Rules, and the knowledge he had of the irregularities surrounding Kimberlin’s employment, there is no excuse for May’s subordinating his obligation to the State to a false loyalty to his employing authority. We have previously held, and repeat, that the commission of a wrong cannot be excused on the basis that it was required under the orders of a superior. May’s failure to report the obvious violation of Rule 14 in the employment of Kimberlin and his participation in the false certification on the payroll and subsidiary documents, put him in violation of Rules 14.2 and 15.2 and of Paragraph (N) (4) of the Civil Service Amendment.”
While we agree with learned counsel for the Commission that the Commission’s findings of fact in an investigation initiated under authority of Article XIV, Section 15(0) (4) are binding upon this Court by virtue of the provisions of Article XIV, Section 15(0) (1), the rulings of the Commission in such instances are nevertheless reviewable by this Court on matters of law as expressly provided for in said same paragraph (O) (1). It is now the well settled jurisprudence of this state that if there is some evidence to support a factual finding of the Commission such finding is binding upon the Court whereas if there is no evidence to support a factual determination of the Commission such finding, as a matter of law, is erroneous and must be set aside. Colvin v. Division of Employment Security, La.App., 132 So.2d 909; Hays v. Wildlife and Fisheries Commission, La.App., 136 So.2d 559.
As correctly contended by counsel for the Commission, Article XIV, Section 15(B) and (C) of our state constitution creates and establishes a Department of State Civil Service and a State Civil Service Commission investing each with certain duties, powers and responsibilities relative to administration and enforcement of the Civil Service Law and Rules. In addition to its administrative responsibilities, the Commission is clothed with quasi-judicial power and authority, its decisions in such respect and capacity being subject to review by this Court as provided for in Article XIV, Section 15(0) (1) of the Constitution of this State.
The authority under which the investigation of the present matter was conducted by the Commission is contained in Article XIV, Section 15(0) (4) of the Constitution, LSA, which reads as follows:
“(4). Violations; investigations, hearings; suspension or dismissal.
“The State and each City Civil Service Commission may, at any time, upon its own initiative, investigate any violation by any person of the provisions of this Section, and shall upon the filing of written charges by any person of such a violation within one year after the alleged violation, investigate such charges. Within ninety days after the filing of charges as herein provided, the Commission shall hold a public hearing concerning the charges. If the appropriate Commission, after public hearing in an investigation instituted either on its own initiative or after charges, shall determine that the person or persons under inquiry have violated any of the provisions of this Section, the appropriate Commission is empowered, in its discretion, to direct the appointing authority having power and supervision over any offending officer or employee in the State of (sic) City Service, as the case may be, forthwith to suspend without pay for a period of time designated by the Commission or to dismiss such officer or employee, and such officer or employee shall be suspended or dismissed as directed by the Commission.”
The Commission concedes that as a general rule it has no supervisory or disciplinary jurisdiction over state or local employees who are non-members of the constitutionally created Civil Service System (commonly referred to as non-classified *117 state and municipal employees). The Commission does contend, however, that by virtue of the hereinabove quoted provisions of Article XIV, Section 15(0) (4) it is expressly and specifically conferred supervisory jurisdiction over all employees of the state and local governments (including non-classified department heads such as appellant Coon) with respect to alleged violations of the Civil Service Amendment or rules of the Commission. Stated otherwise, the position of the Commission is that although as a general rule it has no supervisory or disciplinary jurisdiction over non-classified employees and cannot order the suspension or dismissal of such employees for any cause unrelated to a violation of the Civil Service Amendment or a rule of the Commission, nevertheless, all non-classified employees are amenable to its jurisdiction in matters involving violations of the Civil Service Amendment or rules of the Commission. Learned counsel for the Commission argues that to deny the Commission such authority is to prevent the effective administration and enforcement of the Civil Service Amendment intended by the legislature and electorate of this state. The Commission concedes it has no direct power or authority to suspend or dismiss a non-classified employee found guilty of an amendment or rules violation since Article XIV, Section 15(0) (4) confers upon the Commission only the power to order the appointing authority to carry out the decree of the Commission under penalty of contempt as provided for in the Commission’s rules adopted in pursuance of the Amendment.
In the instant case it appears that in obedience to the directive of the Commission both appellants were suspended without pay for the duration ordered by the Commission.
Appellant May concedes he is a classified civil service employee subject to disciplinary action as the result of an investigation initiated by the Commission pursuant to the provisions of Article XIV, Section 15 (O) (4) but contends his suspension was unauthorized, illegal and improper because of a complete lack of evidence to substantiate any of the charges lodged against him. Appellant Coon (admitted by the Commission to be a “non-classified” employee not generally subject to its jurisdiction) maintains that in his capacity as a non-classified employee the Commission has jurisdiction over neither his person nor the subject matter since the authority of the Commission under the Amendment is limited solely to persons in the classified service. Alternatively, counsel for appellant Coon contends that if appellant be found subject to the jurisdiction of the Commission as a matter of law, his suspension was likewise without lawful cause because of a total lack of evidence in proof of the violations charged.
We note that Article XIV, Section 15 (O) (4) herein relied upon by the Commission confers the authority to initiate investigation of “any violation by any person of the provisions of this Section”. (Emphasis supplied.) While it may be argued that the authority thus granted is restricted solely to alleged violations of the Amendment and does not extend to alleged violations of the Commission’s Rules, no such contention is made in the instant case and for that reason we refrain from passing upon the issue. In any event both appellants herein are charged in at least one respect with a violation of the Amendment itself.
In substance and effect the rules violation herein charged against appellant May are as follows: (1) appointing Kimberlin to the position of Fire Marshal I for “political reasons” (N) (2) and Rule 14.1 (a); (2) making false statements regarding Kimber-lin’s appointment preventing impartial application of rules (N) (4); (3) failure to report Kimberlin’s improper and alleged fraudulent employment to the Director of the Department of Civil Service (14.2); and (4) falsely certifying payrolls and time sheets showing Kimberlin to have worked eight hours daily when in fact said employee had performed no services whatsoever (15.2).
*118 The theory of the Commission’s case against appellants herein may be tersely stated as follows: Coon, as Fire Marshal, employed Kimberlin because of political pressure allegedly emanating from certain parties occupying positions of authority in the State Government. Although Kimber-lin was otherwise employed full time at a salary of $750.00 per month he was nevertheless initially appointed to the position of Fire Marshal I (by emergency appointment suggested by Coon) at a salary of $245.00 monthly. Two extensions of the emergency appointment were granted by the Commission at the urging of Coon and ultimately Kimberlin applied for Civil Service Classification, was given and passed the Civil Service Examination for the position, certified by the Commission as eligible and provisionally appointed as a classified Fire Marshal I. During the entire procedure no mention was made of assigning Kimberlin to special duty as a consultant or “bomb” or “explosive expert” as is presently contended. The Commission further maintains that not until the investigation was initiated did the question of Kimberlin’s status as a consultant arise. According to the Commission both Coon and May were aware of the misrepresentation alleged as well as the fact that Kim-berlin allegedly performed no services for the salary received.
In defense of his employment of Kim-berlin, Coon asserts that the former, because of his background and knowledge of explosives, was engaged as a specialist or consultant in matters dealing with explosives with the understanding that Kim-berlin would maintain no regular hours but would be subject to call at any time. Kim-berlin’s employment in such capacity is said to have been justified because of a rash of bombing threats arising from school integration ordered by the Federal Courts. Additionally, it is contended a full disclosure of facts was made for the reason that Kimberlin’s application for Civil Service classification showed on its face that Kimberlin was then presently employed full time at a much larger salary than that he-would receive in the position of Fire Marshal I.
The charge that appellant May appointed Kimberlin to the position of Fire-Marshal I for purely political motivations is utterly, totally and completely without foundation in the record. There is not one iota of evidence that May had any connection whatsoever with Kimberlin’s appointment. On the contrary, the record amply demonstrates that Kimberlin was appointed solely by Coon and the finding of the Commission itself is to the effect that May never met Kimberlin until the date of the hearing which resulted in May’s suspension. On the issue of alleged political favoritism, the only evidence in the record is the testimony of W. W. McDougall who stated that Coon informed him that he, Coon, had employed Kimberlin at the request of a party in high political office. Nothing in McDougall’s testimony even remotely suggests that May was aware of this situation or in any manner participated in the appointment of Kimberlin. In fact as herein previously shown, the evidence on this particular issue discloses (as found by the Commission) that May was unaware of Kimberlin’s appointment until informed thereof by Coon (May’s superior) who instructed May to place Kimberlin’s name on the payroll as a new employee.
The charge that May made false statements regarding Kimberlin’s appointment thereby committing a fraud and preventing impartial execution of the Commission’s rules is founded on the premise that the application submitted by Kimberlin to gain classified status indicated he was applying for the position of Fire Marshal I and not as an explosive or bomb expert as contended by Coon and May. In this regard the evidence shows that from his initial emergency appointment until his classification and certification subsequent to taking the Civil Service examination, all of Kimberlin’s papers showed he was engaged in the capacity as Fire Marshal I and *119 not as a specialist or “bomb expert”. He was carried on the payroll as such and his time sheets indicated his employment in such capacity. The Commission found as a fact that the contention that Kimberlin was a “specialist” was not advanced until after the investigation was initiated and accepting said finding as true (as we must), it nevertheless is not made to appear that May in any manner whatsoever, knowingly, deliberately and willfully participated in such scheme. On the contrary, the evidence shows only that Coon directed May to prepare a request for an additional employee pursuant to which May filled out and sent to the Commission a position description form describing the position to be occupied by Kimberlin as Deputy Fire Marshal I. It conclusively appears from the record that at the time the aforesaid form was submitted on behalf of Kimberlin it was executed by May in conformity with express orders from his superior, Coon. There is not one shred of evidence that May was aware Kimberlin would be employed in any capacity other than that reported on the form in question. It will be further recalled the finding of the Commission itself is to the effect that at this time May had not yet met Kimberlin. No collusion, or intentional or deliberate wrongdoing on the part of May is shown in the record. Assuming the report to be false, a subordinate executing same upon instruction from his superior in the honest belief the information imparted to him by his superior and inserted therein is true and correct, can hardly be held in violation of the Commission’s rule regarding a false report.
Likewise, the Commission’s finding that appellant May was in violation of Rule 14.2 because of his alleged failure to report an obvious violation of Rule 14.1(a) in the employment of Kimberlin is without factual corroboration in the record. Rule 14.1(a), it will be recalled, deals with the appointment of an employee through political favoritism. Rule 14.1(a) and 14.2 are as follows:
“14.1(a) No person shall be appointed or promoted to, or demoted, or dismissed from any position in the State Classified Service, or in any way favored or discriminated against with respect to employment in the Classified Service because of his political or religious opinions or affiliations.”
“14.2 Report of Violations.
“It shall be the duty of any employee or State official to report promptly any violation of this Rule to the Director whose duty it shall be to make a thorough investigation concerning the alleged violation and report his findings to the Civil Service Commission.”
As previously shown there is not one iota of evidence tending to show May was aware of any “political pressure” in the appointment of Kimberlin. Although the record further shows that Kimberlin is the brother-in-law of another state official from which the Commission apparently infers political favoritism, there is nothing in the evidence showing May was cognizant of such fact. Unless it be shown that May was cognizant of the fact that Kimberlin was appointed because • of political favoritism, he can hardly be charged with violating Rule 14.2 in failing to report the occurrence of the alleged political appointment.
Rule 15.2 of the Commission which appellant May is charged with having violated reads as follows:
“15.2 Certification of Payroll by Appointing Authority.
“The appointing authority shall certify on each payroll or subsidiary documents the fact of the actual rendering of service in the position, the actual number of hours of attendance on duty, and the number of hours of absence from duty.”
It is readily apparent the foregoing rule imposes the duty of certification upon the “appointing authority”. In the instant case the record is clear that appellant Coon and *120 not May was Kimberlin’s appointing authority considering the record indicates beyond the shadow of a doubt that Coon employed Kimberlin and possessed the authority to discharge him at any time prior to Kimberlin’s attaining permanent status. May possessed no degree of supervision over Kimberlin, was not responsible for his employment and neither could he have discharged Kimberlin. ■ The Commission’s conclusion May was the appointing authority is expressly contrary to its factual findings as hereinabove set forth. It will be recalled that the Commission found May “did not know the exact details of the assignment the Fire Marshal had given Kim-berlin. The latter was never placed under his supervision and he merely followed instructions of the Fire Marshal relative to the employment and duties of Kimberlin.” In view of such factual determination we are at a complete loss to understand the conclusion drawn therefrom to the effect May was Kimberlin’s appointing authority. Assuming, solely for the sake of argument that May was in fact the appointing authority in the instant case, the facts and circumstances completely absolve him of any wrongdoing. In this regard the record shows that some 38 agents or employees bearing the Classification Fire Marshal I are in the employ of the Fire Marshal. These agents, scattered throughout the state are virtually “on their own”, that is, work without direct daily supervision. The policy of the department is that agents are on call 24 hours per day, if necessary. Because of the aforesaid method of organization each agent is charged with the responsibility of submitting a daily time and activities report on which he is required to indicate the hours worked and the activities undertaken. It appears that at the request of the Commission each agent was instructed to report an eight hour day (irrespective of the time actually worked) to facilitate computation and maintenance of records relative to annual leave (vacation time) and sick leave. As these daily reports were received they were as a matter of course, approved by appellant May. The Commission charges May with knowledge of the fact that Kimberlin was a so-called “dead head” because the latter did not submit activity reports as required. Such conclusion is not warranted by the evidence. First, it will be recalled that the Commission found as a fact May was uninformed by Coon as to the duties assigned Kimber-lin and secondly, had Kimberlin submitted a false activity report indicating the performance of any duties whatsoever May would not have been in a position to determine the correctness thereof.
It follows, therefore, that the suspension of May ordered by the Commission was without lawful cause and the ruling of the Commission ordering May’s suspension must be reversed and set aside.
Appellant Coon maintains the scope of Paragraph (0)(4) is limited in application to “persons” embraced within the Civil Service System or, stated otherwise, restricted exclusively to classified employees in either the State or City Service as defined in the amendment. In this regard it is suggested further that as the head of a state department appointed as such by the Chief Executive of the State, appellant is expressly designated an “unclassified employee” and in said capacity excepted from the jurisdiction of the Commission by the force and effect of Article XIV, Section 15(G) (a) (2), which states:
“(G). Unclassified and classified service; definitions; change of status. “The ‘State Service’ and the ‘City Service’ of cities of the State having a population exceeding two hundred fifty thousand shall be divided into the ‘unclassified’ and ‘classified’ service.
“(a) the Unclassified State and City Service shall comprise the following offices and positions: * * * (2) heads of principal departments appointed by the Governor or the Mayor or other governing body of any city, including the State Fire Marshal, Surveyor General, State Live Stock In *121 •spector, Service Commissioner for United Spanish War Veterans, Director of Veterans’ Affairs, and Director of Civil Defense, and the administrator of the Division of Employment Security in the Department of Labor, who shall be appointed by the Governor.”
The Commission, on the other hand, argues that the provisions of (G) (a) (2) as well as those of (O) (4) support its position that appellant Coon is subject to the Commission’s authority in the instant mater. Learned counsel for the Commission acknowledges that the amendment itself provides for different classes of State and Local employees such as “classified” and ■“unclassified” employees in both the State and City Service as defined in the amendment.
As suggested by counsel for the Commission, Paragraph (G) (a) divides state service into “classified” and “unclassified” categories, the former being defined in sub-paragraph (b) and the latter in sub-paragraph (a) of Paragraph (G). The Commission further contends that after defining the term “classified employee” in (G) (b), the term “classified” thereafter used in the amendment designates those positions in the State Service to which the rules of the Commission apply with reference to examination, certification, appointment, compensation, classification, tenure, etc. Coexistent with those provisions which apply only to persons in the classified service, the Commission asserts there are certain other provisions which apply without limitation to anyone in the State Service as defined in (G) (a) (2). In this regard the position of the Commission is that any one in the state or city service, whether classified or unclassified, is subject to those provisions of the amendment wherein the word “person” is employed without reservation or qualification to persons in the classified service and particularly (N) (2), (4), (5), (8); (O) (8); _ (P) (3), (4) and (5). From the foregoing the Commission reasons that appellant Coon is amenable to its investigatory jurisdiction emanating from (O) (4) because said section subjects “any person” to the provisions thereof without limitation to persons in the classified service.
Succinctly put, the issue is simply wheth-the provisions of Article XIV, Section IS (0) (4) of the state constitution (which gives the Commission authority on its own initiative to investigate alleged violations of the Amendment and order certain disciplinary action as a result thereof) is applicable to an unclassified employee in the “State Service” as defined in the appropriate section of the amendment. In the instant matter the position involved is that of a department head appointed by the Chief Executive of the state.
 In the interpretation of a constitutional article the courts are not bound by a literal interpretation where to do so would lead to an absurd conclusion or to a plain violation of the spirit and purpose of the enactment. State v. Joseph, 143 La. 428, 78 So. 663, L.R.A.1918E, 1062. The real purpose and intent of a constitutional provision, as determined from consideration of all its component sections and paragraphs, must prevail over a literal meaning which would assign thereto an effect contravening the primary purpose and intent thereof. State ex rel. Fernandez v. Feucht, 182 La. 134, 161 So. 179. To arrive at the true meaning and intent of a particular provision of a constitutional article recourse may be had to the entire instrument, if necessary, to ascertain the true meaning of the provision to be construed. Meyers v. Flournoy, 209 La. 812, 25 So.2d 601.
Learned counsel for appellant Coon maintains that although appellant is admittedly in the “State Service” he is acknowledged by the Commission to be in the unclassified service. Predicated on the foregoing, counsel argues appellant is not amenable to the jurisdiction of the Commission under any provision of the amendment for the reason the supervisory and investigatory powers possessed by the Commission *122 extend solely and only to employees in the Classified State or City Service. It is further contended that although appellant may be subject to criminal prosecution before the courts for violation of (N) (4) and (5) such violations may be prosecuted only in a court of law and the Commission possesses no authority over appellant in this regard.
Conversely, the Commission avers that appellant as well as any person (including individuals not in the State or City Service) are amenable to certain provisions of the amendment wherein the unqualified term “person” is employed and that appellant Coon is peculiarly amenable to the provisions of Section 15(0) (4) not only because the word “person” appears therein without qualification but also because said paragraph expressly grants the Commission authority to “direct the appointing authority having power and supervision over any offending officer or employee in the State of (sic) City Service, as the case may be, forthwith to suspend * * *, etc.” It is further contended on behalf of the Commission that without penalties and the power to impose sanctions upon unclassified employees in the State or City Service the investigatory power conferred by Paragraph 15(0) (4) would be rendered impotent and ineffective, hence the authority under said paragraph to order disciplinary action against unclassified employees with which directive the appointing authority of the unclassified employee must comply under penalty of contempt for the rules and orders of the Commission.
Our careful reading of the amendment in its entirety leaves little doubt that the primary, basic and underlying purpose of the amendment as a whole is promotion of efficiency in the conduct of the affairs of the state and municipal governments by providing for the selection of qualified employees engaged under a competitive system free of political domination and designed to secure the services of the most competent individuals available for governmental service. To encourage initiative and foster a sense of loyalty and devotion to duty as well as take advantage of the knowledge gained from years of experience, the system protects the employee from arbitrary or capricious discharge and insulates him against the evils of the “spoils system” by insuring that his dismissal, demotion or replacement may be only for cause. Conceding the obvious merits of such a system to both the employee and the State and local governmental units, the amendment providing for its creation is not without some limitation in its scope and effect.
Also, there is little room for doubt but that in general the amendment seeks to control and regulate persons in the classified service only. All of its sections dealing with the authority of the Commission regarding classification, examination, certification, employment, dismissal and other matters relative to employees contain language which limit their application to employees in the Classified State or City Service. We have searched the amendment most carefully and detect therein nothing indicative of intent to extend application of its general provisions to unclassified employees. The Commission concedes that because appellant is an unclassified employee the Commission’s jurisdiction over him is limited and that the Commission is without authority to investigate any conduct of appellant unrelated to an alleged violation of the amendment or a rule of the Commission. It contends, however, that it possesses authority under 15(0) (4) to investigate appellant for an asserted violation of the amendment or a rule of the Commission and pursuant thereto order appellant’s appointing authority to take such disciplinary action as the Commission shall direct.
Paragraph (N) (2), which the Commission contends is applicable to appellant is patently inapplicable considering it deals solely and only with persons in the classified service and prohibits the employment of such personnel predicated upon political favoritism.
*123 Paragraph (N) (4), (S) and (8), respectively, prohibit any person from (1) making false reports to the Commission; (2) soliciting, giving or receiving a bribe in connection with an appointment to or promotion in a classified position and (3) employment in the classified service while holding elective office. Neither of the three foregoing paragraphs contain a penal clause consequently violation thereof is punishable only under the general penal section of the amendment (P) (3) which provides for a fine of not less than $100.00 nor more than $1,000.00 or imprisonment for not less than one month nor more than six months, or both. Our examination of Paragraph (O) (8) reveals that it deals only with the assessment of costs to any department or agency against whose action an appeal is taken or a hearing granted. Paragraphs (P) (3), (4) and (5) constitute general penal provisions; (3) sets forth the penalties hereinabove mentioned; (4) provides that conviction of a misdemeanor under the amendment shall in the case of a classified employee be ground for 10 years ineligibility for appointment to a position in the classified •service and in the case of an employee in the unclassified service, forfeiture of any public office held by such employee; (5) provides for withholding the compensation ■of a classified employee engaged in a violation of the amendment and further declares that the rules of the Commission shall be enforced by the courts by mandamus or injunction.
It is to be noted that the Commission is given no power or authority to impose the •criminal penalties provided in (P) (3), for violations of any provision of- the amendment or rules of the Commission, said function being reserved exclusively to the Courts. Again, invocation of the effects of (P) (4) by .the Commission is dependent upon conviction of a misdemeanor violation under the amendment but by a duly constituted court of law.
The only instance wherein the Commission may on its own initiative, investigate an, alleged violation of the amendment and direct disciplinary action which must be carried out by the appointing authority is provided for in (O) (4), in which we find the following:
“The * * * Commission may * * * upon its own initiative, investigate any violation by any person of the provisions of this Section * * *, the appropriate Commission is empowered * * * to direct the appointing authority having power and supervision over any offending officer or employee in the State of (sic) City Service, * * * forthwith to suspend, etc.” (Emphasis supplied.)
Broadly interpreted the term “any person” includes everyone without exception or limitation and thusly construed encompasses even elected officials as well as persons in the non-classified service. While the issue of the application of the section to elected officials is not presently before us, projection of the Commission’s argument to its ultimate extent would result in the Commission being granted supervisory jurisdiction over the duly elected officials of this state. We believe such result clearly repugnant to the express purpose and aim of the amendment. Such authority in the hands of an appointed bureaucracy is never to be presumed nor is the authority of appointed agencies of the state ever to be extended or enlarged by implication or inference.
The only interpretation of (O) (4) consistent with the basic concept that the amendment is intended to regulate and control employment in the classified services alone, is that the paragraph in question (O) (4) is intended to apply solely to persons in the Classified State or City Service. It appears that the words “State of City Service” were obviously intended to mean “State or City Service”. It further appears that the word “Classified” was inadvertently omitted from the phrase “State of (or) City Service” and that said phrase should read “State of (or) City Classified Service.”
*124 Under IS (O) (4) the Commission is vested with the power of both prosecutor and court — a most unique and unorthodox combination of authority. While we do not question the validity of such unusual amalgamation of basic governmental functions emanating from the constitution itself, such provision being so unusual in character and scope must be so construed as to limit its application to the class of employees intended to be embraced within the general purpose of the amendment as a whole, namely, classified employees.
While it is quite true that any person whether in the classified or non-classified service, or even a party not within the state or city service at all, may be prosecuted before the courts for violating the provisions of (N) (4) and (5), it does not necessarily follow that the Commission may, on its own initiative, institute proceedings against persons in the non-classified service under (O) (4). A violation of (N) (4) or (S) merely has the effect of subjecting the transgressor to the penalties provided in (P) (3) if he be in neither the State nor City Service but at the same time rendering him subject to the penalties in both (P) (3) and (4) in the event he be in the State or City Service whether classified or unclassified.
Each paragraph of the amendment must be interpreted in the light of its own peculiar provisions which must in turn be construed so as to blend and harmonize with the general aim, intent and purpose of the amendment as a whole. The courts are without authority to place upon such a provision a construction rendering it inconsistent with the underlying purpose of the whole of which it is a component. To hold that IS (O) (4) extends and applies to persons in the State or City Unclassified Service is to subject to the jurisdiction of the Commission a class of State and City employees not intended to be smbraced within the general purpose of che amendment. We hold, therefore, that IS (O) (4) is limited in application to persons employed in the State or City Classified Service as defined in the amendment.
Learned counsel for the Commission argues that to so construe the provision is to nullify the effect thereof. The answer to the foregoing contention is that the intent and purpose of the amendment is to confer upon the Commission such authority over Classified Employees as to enable the Commission to institute investigations on its own initiative in those instances wherein a Classified Employee has violated a provision of the amendment. Section 15 (O) (4) is an obvious aid to the Commission in the discharge of its administrative and enforcement obligations with respect to Classified Employees and the powers therein conferred may be exercised with regard to Classified Employees independently and irrespective of the disciplinary power possessed by the appointing authority of such employees. In effect Section 15 (O) (4) gives the Commission control over Classified Employees.
Unquestionably, effective administration and enforcement of the system by the Commission with respect to the persons embraced therein, namely, Classified Employees in the State and City Service, can only be achieved by recognition of the supervisory authority and powers conferred upon the Commission over such employees by the amendment.
The answer to the Commission’s argument that effective administration and enforcement of the system requires the authority of the Commission to control persons not embraced therein, is that the framers of the amendment gave the Commission full authority over Classified Employees and considered this sufficient. Having given the Commission supervision, regulation and control over all Classified Employees, the legislature and the electorate chose to limit the Commission’s authority to that extent and vested all further enforcement authority in another agency, namely, the courts.
Of considerable further significance is the fact that whereas the Commission *125 claims the power of regulating and supervising nonclassified employees, it neither claims nor asserts the right or authority to protect the non-classified employee from arbitrary or discriminatory discharge, suspension or removal from his position of employment. Such rights and powers being correlative, one cannot exist without the other. Any other conclusion would produce the anomalous result of subjecting an employee to suspension or dismissal from a position of profit by an agency lacking in authority .to protect him from arbitrary, capricious and unwarranted discharge therefrom.
No better evidence of such legislative intent could be offered than the fact that the penalties provided for in (P) (3) for violation of (N) (4) and (5) may not be imposed by the Commission but by the courts. Apparently the redactors of the amendment considered that with respect to persons dehors the system the penalties provided in (P) (3) were sufficient to insure compliance with the amendment. The degree, extent and scope of the Commission’s authority must, perforce depend upon the language contained within the four corners of the amendment. It was certainly within the powers of the drafters of the amendment to provide that persons outside ,the system were amenable only to the jurisdiction of the courts quoad violations of the amendment and the Commission, having no authority other than that granted by the amendment, may not complain because a segment of the enforcement phase has been entrusted to another agency.
From the foregoing, it follows that the Commission was without jurisdiction over the person or position of appellant Coon in his capacity as Fire Marshal (an unclassified position in the State Service) by virtue of the provisions of Article XIV, Section IS (O) (4) of the constitution. The Commission possessed no authority to investigate, on its own initiative, an alleged violation of the Civil Service Amendment by an employee in the unclassified service of the State and direct the suspension of such employee by his appointing authority. The order of the Commission was, therefore, illegal, null, void and of no effect and must be rescinded, reversed and set aside.
For the reasons hereinabove set forth, it is hereby ordered, adjudged and decreed that the order of the Civil Service Commission directing the suspension of appellants John E. Coon and A. H. May, Jr. without pay for periods of 10 and 5 working days, respectively, is hereby recalled, reversed, rescinded and set aside and the appointing authority of said appellants ordered to pay said appellants the wages or salary to which they were respectively entitled during said periods of unauthorized suspension.
Reversed.