REID, Judge
This is an appeal from a decision of the Civil Service Commission suspending appellant H. P. Walker from his position as an insurance technician and employee *238 of The Casualty and Surety Division of the Louisiana Insurance 'Rating Commission. Briefly the facts show as follows: On December 9, 1964 the Civil Service Commission under the provisions of paragraph “O” of Section 15 of Article XIV of the Constitution on its own initiative ordered an investigation of certain violations of the Civil Service Act and particularly to inquire into and determine whether or not Miss Sarah M. Dixon, -H. P. .Walker,; E. D. Wingate and any other person or persons have violated any part of the .Sec-, tion of the Constitution or any rule adopted pursuant thereto, or both,, in connection with the truth of the reports concerning classification, duties, pay and increase in. pay and other personal or employment conditions and disbursements relating to the s.aid Miss Sarah M. Dixon and also in connection with the actual duties performed and disbursements received by said Miss Sarah M. Dixon from said State Agency. Said hearing to be held on January 13, 1965.
On January 13, 1965 a public hearing was held and recessed to be resumed at' the next meeting of the Commission. On February 2, 1965 the hearing was resumed and evidence and testimony was taken and the matter submitted 'and taken under advisement by the Commission.
On March 24, 1965 the Commission rendered a finding of fact and conclusion as a result of which the appellant H. P. Walker was suspended without pay for a period of ten days. From this decision of the Commission he has brought this appeal.-
The contention of the appellant is that the finding of facts and decision by the Commission is an error of law. That is the sole issue before this Court in the matter.
The pertinent parts of the finding of facts by the Commission in regard to the appeal by Walker are as follows:
“3. In August, 1962, E. D. Wingate requested H. P. Walker to write a job description combining the duties of file room supervisor with that of an Insurance Rate Supervisor, and Win-gate informed Walker that such job was to be filled by Sarah Margaret Dixon. Walker wrote such a description on August 13, 1962.
“4. Bearing the date August 15, 1962 a Form SF-8 (Position Classification Appeal) was prepared and filed with the Department of Civil Service on August 17, 1962. This form requested reclassification of Miss Dixon’s position from Clerk IV to Insurance Rate Supervisor I, and it represented that Miss Dixon had been performing supervisory duties pertaining to insurance rate examining since July 1, 1962. ■
“5., Following statements on the SF-8 reading: ‘The information supplied above is, to the best of my knowledge, true and correct.’ Miss Dixon and H. P. Walker signed that document. The ‘information supplied’ in that SF-8 was false.
“6. Both Miss Dixon and Mr. Walker knew that Miss Dixon had never performed any of the duties of the supervisor of any insurance rate examiners, and they both knew that the information supplied in the SF-8 was not true.’’
* * * * * *
“12. At some date shortly after the filing of the SF-8 and SR-10 which resulted in the reclassification of Miss Dixon’s job from Clerk IV to Insurance Rate Supervisor I, and upon his learning of that reclassification, H. P. Walker called the attention of E. D. Wingate to the fact that Miss Dixon was not undertaking to perform any of the supervisory duties in the insurance rate field, and Walker was told by Wingate that the Department of Civil Service was aware of the fact *239 and that the full time of Miss Dixon was required in the file room.
“13. In 1964, a short time after E. D. Wingate left the employ of the Casualty and Surety Division, H. P. Walker suggested to his then superiors that the Department of Civil Service be requested to make a classification audit of the entire Division. The request was made; the audit was made; and the findings of that audit gave rise to these proceedings.”
Based on these findings the Commission made the following conclusion:
“(a) Although it is apparent that the persons who had full knowledge of the facts surrounding the making of these misstatements of fact were present and testified before the Commission, no one of them seemed to be willing to be completely frank with the Commission.”
“(b) Mr. Walker knew that she (Miss Dixon) was not performing these duties, and yet he signed the Position Classification Appeal certifying that the information therein was correct.”
“(c) The evidence produced before us convinces us that * * * H. P. Walker * * * knew, or should have ■ known, that the statements that they had signed or caused to be signed in • connection with the employment of Miss Dixon were not true.”
“(d) Mr. Walker was induced to make the improper certificate that he made on the SF-8 through fear of retribution from E. D. Wingate, or through negligence in failing to read the material, as to the truth of which he was certifying. In any event, we hold that he is not exonerated and must be disciplined.”
The violation with which the appellant is accused comes under the provisions of Article XIV, § IS, paragraph (N) (4) which reads as follows:
“(4) No person shall may any false statement, certificate mark, rating or report with regard to any test, certification or appointment made under any provision of this Section, or in any manner commit or attempt to commit any fraud preventing the impartial execution of this Section and the rules.”
Under the provisions of paragraph (O) (4) Civil Service Commission has the power to suspend without pay for a period of time designated by the Commission, or to dismiss any employee found in violation of the provisions of this Act.
On April 21, ■ 1965 the attorneys for the Civil Service Commission . and the appellant entered into a joint stipulation as f0l-lows: . ■•...•
“1. All witnesses who testified with regard to this fact agreed that when this job description was prepared b.y Mr. Walker and when he signed the SF-8 Form in question it was his un- , derstanding that this was a request for the creation of a new combination job which was to be .filled, if in fact, the job was created.
“2. All witnesses who testified with regard to this fact agreed 'that' the SF-8 in question was not prepared or typed by H. P. Walker or any of the secretaries in his office, and under his supervision, nor was it typed. on any typewriter in his office.”
There is no question but what Mr. Walker had knowledge or knew of the fraud being perpetrated in the creation of this job. The Commission found that Mr. Walker did not type the application or request, nor was it done by .any secretary in his office, and that it was- his understanding that this was a request for a new combination job which..was to be filled if in fact the job was created.
*240 The finding of facts by the Commission shows that the appellant signed the certificate in question either through error or because of pressure and “fear of retribution” from his superior if he failed to do so. He signed it at the request of his superior. The finding of facts also shows that as soon as .appellant learned of the reclassification of the employee in question and the fact that she was not performing the duties that she was supposed to perform he went immediately to his superior, Mr. Wingate, who had requested him to sign the certificate and reported this fact, and was told by his superior that all' of this information was then known to the Civil Service Commission.
After his superior was no longer employed by the Casualty and Surety Division Mr. Walker then reported the incident to his new superior and as a result a classification audit of the Casualty and Surety Division was ordered and made at the instance of this appellant.
While it is true that Mr. Walker signed the certificate and he knew that the employee in question was not performing the duties of the classification, we feel that he did all that he could do about reporting the fact to his immediate superior at the time and then later when a new superior came in he reported the matter to him and as a result the audit was made which disclosed the fact and this investigation resulted.
We feel that Mr. Walker acted in good faith and he had nothing to gain either way, except maybe the enmity of his superior who had requested him to sign the necessary papers, Form SF-8.
We feel that this case comes under the decision of this Court in Colvin v. Division of Employment Security, La.App., 132 So.2d 909. We held in that case that anyone to be guilty of fraud two elements defined in Louisiana Civil Code Article 1847 must be present, which reads as follows :
“Fraud, as applied to contracts, is a cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other.”
We further held in this Colvin case that
“Upon our examination of the term ‘fraud’ or ‘fraudulent’ we find that two elements are essential to constitute legal fraud, the intention to defraud and loss or damage or a strong probability of loss or damage.”
In the Colvin case Mr. Colvin filed claim for travel expenses incurred on a trip to Texas, while in fact, he had gone to Nebraska which was done at the direction and insistence of his immediate superior.
We feel that the instant case comes clearly under this proposition of law. The Commission found that Mr. Walker signed the certificate, Form SF-8, either through error or through fear of reprisal by his immediate superior. He made every effort to rectify this by reporting to his superior, Mr. Wingate, that the employee in question was not performing the duties of the new job, and was merely continuing in her old job at an increase in salary to what she had previously been receiving. In addition he reported the matter to his new superior when a change was made in personnel. The Commission evidently recognized that this was a small matter by the fact that they only suspended him without pay for a period of ten days. However, even this is a black mark against his record and we fail to see how the Commission on the one hand exonerated him from any premeditated or deliberate effort to commit fraud, and then imposed this punishment upon him.
*241 We cannot, under the law, review the facts as found by the Commission. Taking the finding of facts and applying the law to them is what we are doing in the instant case.
This Court held in the case In re Coon, La.App., 141 So.2d 112 as follows:
“ * * * the evidence shows only that Coon directed May to prepare a request for an additional employee pursuant to which May filled out and sent to the Commission a position description form describing the position to he occupied by Kimberlin as Deputy Fire Marshal I. It conclusively appears from the record that at the time the aforesaid form was submitted on behalf of Kimberlin it was executed by May in conformity with express orders from his superior, Coon. There is not one shred of evidence that May was aware Kimberlin would be employed in any capacity other than that reported on the form in question.” * * * “No collusion, or intentional or deliberate wrongdoing on the part of May is shown in the record. Assuming the report to be false, a subordinate executing same upon instruction from his superior in the honest belief the information imparted to him by his superior and inserted therein is true and correct, can hardly be held in violation of the Commission’s rule regarding a false report.”
The stipulation made by counsel for both parties is to the effect that at the time Mr. Walker signed this Form he did not understand that it implied that the employee was then performing those duties; rather he understood it to be an application for the creation of a new job which was to be filled by the employee in question, if in fact, the Civil Service Commission approved the creation of the job.
We feel that under these circumstances the Commission made an error of law and their decision should be reversed. Accordingly the decision of the Civil Service Commission is reversed, the suspension and penalty revoked, and appellant H. P. Walker is restored to his position with all the emollients and privileges appertaining thereto.
Reversed and rendered.